113 F.Supp. 766 (1953)
UNITED STATES
v.
CALLANAN et al.
No. 2815.
United States District Court E. D. Missouri, S. E. D.
July 17, 1953.
*767 William W. Crowdus, U. S. Atty., Ted Bollinger, Jr., Asst. U. S. Atty., and Marvin C. Hopper, Ass't U. S. Atty., of St. Louis, Mo., Troy B. Conner, Jr., Special Ass't to the U. S. Atty., of Arlington, Va., for plaintiff.
Morris Shenker, of St. Louis, Mo., for defendant Callanan.
Mark M. Hennelly, of St. Louis, Mo., for defendant Bianchi.
John R. Oliver, of St. Louis, Mo., for defendant Lawler.
Philip A. Foley and Wm. J. Hough, of Clayton, Mo., for defendant Secor.
Edward K. Schwartz, of St. Louis, Mo., for defendant Thompson.
HULEN, District Judge.
Defendants move to dismiss the indictment because it does not specify the offense attempted to be charged and employs vague and indefinite terms. This assignment raises a serious issue. The rules on pleading in criminal cases and requirement of an indictment are well known. Generally they are:
"to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 574, 31 L.Ed. 516.
The charging section of the second count of the indictment plainly presents the question raised. It reads:
"did Willfully, Unlawfully, and Feloniously conspire together, and each with the other, to obstruct, delay, and affect interstate commerce and the movement of articles and commodities in interstate commerce, by extortion of property, to wit, Eight Thousand Dollars ($8,000.00) of lawful monies of the United States of America, from said corporation, with its consent, induced by wrongful use of actual and threatened force, violence and fear."
This indictment deviates from the statute only to name (by reference) a corporation, and state an amount of money. The statute, section 1951, Title 18 U.S.C.A. reads:
"Whoever in any way or degree obstructs, delays, or affects commerce or the movement of an article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both." (Emphasis added.)
Extortion is defined by Section (b) (2) of the Act as
"the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened *768 force, violence, or fear, or under color of official right." (Emphasis added.)
In Frankfort Distilleries, Inc., v. United States, 10 Cir., 144 F.2d 824, 830, the Court said:
"Ordinarily it is not sufficient to charge the offense in the words of the statute creating the offense, unless the words themselves fully, directly, and expressly, without uncertainty or ambiguity, set forth all the essential elements necessary to constitute the crime intended to be punished. * * * Where the statute is general in terms and fails fully, directly, and expressly to set forth with certainty and without ambiguity all of the essential elements necessary to constitute offense, the indictment must descend to particulars and charge every constituent ingredient of which the crime is composed." (Emphasis added.)
In each count of the indictment a corporation (identified by reference) is alleged to have parted with money as a result of extortion. The amount of "extortion" is $8,000. The date is August 15th, 1952. The same allegations are in each count. Aside from these facts the language of the indictment follows the statute.
The intent of Congress is apparent in this Act. Parts of it fully and expressly and with certainty set forth some of the elements necessary to constitute the crime covered. Other parts do not meet this norm. The crime created by the statute is interference with or attempt to interfere with interstate commerce, in certain ways one is extortion. There can be interferences with interstate commerce that are not crimes and there can be extortions that are not crimes under the Act. A labor strike might interfere with interstate commerce and not violate this law. A union representative might extort money from an employer and if the extortion was solely with respect to an intrastate industry, the act, though wrongful, would not be covered by the Act, because not affecting interstate commerce.
The Act defines extortion. The definition is general and fails fully and with certainty to set forth the essential elements necessary to constitute an offense. We repeat it:
"the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." (Emphasis added.)
The indictment follows the language of the Act as just quoted, "wrongful use of actual or threatened force, violence, or fear". Facts sustaining this part of the charge against the defendants could be proven and it would not necessarily follow that defendants had violated the law. The government must go further, and prove that by such conduct (wrongful use of actual and threatened force and violence and fear) interstate commerce has been "affected", or that there was an "attempt" to do so. Absence of reference to interstate commerce in the definition of extortion renders that portion of the law incomplete, and consequently an indictment following that language is incomplete to state a charge under the law. This defect cannot be cured by a bill of particulars. It is substantive.
We think the indictment subject to further criticism in this section by use of the word "wrongful", without alleging any conduct by defendants, but only conclusions in the language of the statute. The case of United States v. Murphy, D.C., 50 F.2d 455, 456, has a forceful impact on the indictment in its use of the word "wrongful" without pleading the acts claimed to be wrongful. The Court, in the Murphy case, had under consideration an indictment based on a statute providing:
"Whoever, upon the high seas or on any other waters within the admiralty and maritime jurisdiction of the United States, willfully and corruptly casts away or otherwise destroys any vessel, of which he is owner, in whole, or in part, with intent to prejudice any person that may underwrite any policy of insurance thereon, or any merchant that may have goods thereon, or any other owner of such vessel, shall be imprisoned for life or for any term of years." (Emphasis added.)
*769 The indictment charged the defendants with
"wilfully and corruptly cast[ing] away and destroy[ing] the said Steamship `Rose Murphy' upon the high seas."
The Court held the indictment bad:
"I do not think the mere allegation that they agreed to corruptly cast her away takes the place of averring facts showing corruption. It is well recognized that, where statutes use expressions like this, it is not sufficient to use the statutory words, but the facts showing corruption must be averred just as the facts showing fraud must be averred when you charge that a thing was fraudulently done." (Emphasis added.)
The victim named in the indictment is a corporation. The word "wrongful" as pled is a conclusion. Should the indictment state what actual or threatened force, violence or fear was used in relation to interstate commerce that it may be determined by the Court and defendants, if the acts come within the term[1] used and affect interstate commerce; and since a corporation acts through its duly authorized agents should the indictment in this case tell the defendants the name or names of parties with whom it is claimed they dealt, and the relation of such party or parties to the corporation?
The answer is not found in an argument by the government that the defendant knows with whom he dealt and what was done or attempted. The defendant is presumed to be innocent. Commenting on a similar charge, the Court said of a defendant's position, in Lowenburg v. United States, 10 Cir., 156 F.2d 22, 24:
"He could only sit by and wait until the government introduced its evidence at the time of trial, and then meet it as best he could."
How can defendants know prior to trial one essential element of the charge, what act or acts they are claimed to have done, which were wrongful, and which constituted use of actual or threatened force, violence and fear, and how they affected interstate commerce? It cannot be presumed that means or acts of extortion by "force, violence and fear," or threatened "force, violence and fear" are so limited that defendants could only commit or attempt to commit them in one way. Defendants have a right, prior to trial, to this information.
The government offers a case by this Circuit, Nick v. United States, 8 Cir., 122 F.2d 660, 138 A.L.R. 791, as authority for the indictment form. We have examined the original indictment in that case. It goes to extreme detail in stating facts. A recital of the means and methods used by the defendants and how such conduct affected interstate commerce covers many pages in the indictment. Perhaps the factual situation called for it. We are not suggesting that it be used as a model in this case, but it certainly does not represent an authority for the indictment in this case.
Government counsel also present as authority for the indictment under consideration a form used in the case of United States v. Kemble, 3 Cir., 198 F.2d 889, 901. That case is of value in this case for various reasons. At no stage in the proceedings was the indictment called into question by the defendants. In one of the dissentsthere are three dissents in the seven-judge courtby a footnote it is said of the indictment:
"The indictment charging Kemble and Local 676, returned February 15, 1950, is loosely drawn, and on its face seems to charge a conspiracy against Kemble and Local 676 but may be construed as charging Kemble and Local 676 with participation, individually, in a plan to obstruct interstate commerce by physical violence and threats of physical violence. Insofar as the record before us shows, no motion was filed to make the indictment more definite or certain or to draw it out. By the end of the trial of the case the *770 court below and counsel for the parties were treating the indictment as charging participation in the acts prohibited by the statute rather than as an indictment for a conspiracy. I adopt their interpretation of the indictment."
An indictment described as "loosely drawn" and which "seems" on "its face" to charge a "conspiracy" but which, by the "end of the trial," the parties were "treating" as charging acts "prohibited by the statute" rather than "as an indictment for a conspiracy," does not commend itself to this Judge. In view of the voluntary views of the appellate Judge on the indictment can there be much doubt what would have been the District Court's ruling had it been attacked, in the trial court, as the one in this case now is?
In passing we make the observation that the indictment in the Kemble case did not attempt to state the offense covered by the pending indictment. As we read the case and the conflicting views of the four Judges who wrote on the subject, one appellate court Judge in his dissenting opinion points this out, although he "adopted" the theory on which the case was tried. The statute covers a crime committed by acts of physical violence to any person or property in furtherance of a plan to affect interstate commerce, separate from interference by extortion, as set forth in the indictment in question. The indictment in the Kemble case did state the character of violence used and on whom it was used, thereby coming closer to pleading the substance of the offense than the one before us.
It serves no useful purpose for an indictment to hew as close to the line of omitting factual allegations as prosecuting counsel think the authorities will permit and thereby be faced with taking the chance of the indictment being sustained by the District and higher courts. It is a far better rule of pleading to comply with a reasonable interpretation of the authorities and to state facts rather than conclusions under the circumstances described.
Nor are we convinced the matters commented on do not affect substantial rights of the defendants. The indictment itself falls short of stating the substance of the offense and informing the defendants of the essential facts of the charge they must meet. We have not been unmindful of the office of a bill of particulars. We do not commend it to inform defendants of the essential elements of a charge. Its purpose is to inform defendants of collateral facts and not substantive parts of the charge.
The grand jury which returned this indictment is still in session. We will defer entering an order until that body has had time to consider further proceedings on the facts relative to the present charge, and act, if they so will. Cases No. 27504 and No. 27489 are pending before me with like motions, and are subject to the same conclusions reached in this case.
If new indictments are returned the United States Attorney's office should consider that they (1) state facts on which the government will rely to show wrongful, actual or threatened force, violence and fear, as charged; (2) plead facts connecting the conduct condemned with interstate commerce. Such statement of facts should be short and concise, as provided by the Criminal Rules.
NOTES
[1] The word wrongful used in the statute has a well-recognized meaning, such as appeared in the statute prior to amendmentto take with an evil motive, a criminal intent, in violation of the criminal law.