**RELIABLE VOLKSWAGEN SALES AND SERVICE COMPANY, Inc., Plaintiff,**

v.

**WORLD-WIDE AUTOMOBILE CORP., Fifth Avenue Motors, Inc., Queensboro Motors Corp., Volkswagen of America, Inc., Volkswagen United States, Inc., Volkswagenwerk G.m.b.H., Charles J. Dillon and Arthur Stanton, Defendants.**

Civ. A. No. 132–59.

United States District Court
D. New Jersey.
Feb. 24, 1960.

414

Crummy, Gibbons & O'Neill, by John J. Gibbons, Newark, N. J., Sereni, Herzfeld & Rubin, New York City, by Walter Herzfeld, New York City, of counsel, for defendants Volkswagen of America, Inc. and Volkswagenwerk G.m.b.H., for the motions.

Richard A. McGrath, Jersey City, N. J., Louis G. Greenfield and Sidney W. Rothstein, New York City, of counsel, for plaintiff Reliable Volkswagen Sales and Service Co., Inc., contra.

FORMAN, Circuit Judge.

This is an action by Reliable Volkswagen Sales and Service Company, Inc., a corporation of the State of Connecticut, against World-Wide Automobile Corp., Fifth Avenue Motors, Inc., Queensboro Motors Corp., Volkswagen of America, Inc., Volkswagen United States, Inc., Volkswagenwerk G.m.b.H., Charles J. Dillon and Arthur Stanton. The corporate defendants will be referred to respectively as World-Wide, Fifth Avenue, Queensboro, VOA, VUS and VW. Pursuant to a letter from plaintiff's attorney dated February 4, 1959, only VOA and VW have been served with summons and complaint. It appears from the brief of VOA and VW that plaintiff has filed an identical complaint in the United States District Court for the Southern District of New York where it has caused process to issue against the other six defendants.

The complaint alleges nine causes of action, all of which are derived from substantially the same facts. The first cause of action alleges that the defendants breached a contract entered into with the plaintiff, pursuant to which defendants were to sell to plaintiff a minimum of 30 VW vehicles a month provided plaintiff improved its premises in accordance with plans furnished by the defendants.

The second cause of action is based on fraud and alleges that Messrs. "Dillon and Stanton * * * as agents and representatives of VOA, VUS and VW represented to the plaintiff that it would receive a minimum of 30 VW vehicles a month under the terms set forth in the first cause of action, knowing such representations to be false and intending to induce the plaintiff to rely thereon which it did."

The third cause of action alleges that the defendants have violated 15 U.S. C.A. §§ 1221–1225, the Automobile Dealer Franchise Act, by refusing to execute an alleged franchise agreement between the plaintiff and the defendants VOA, VUS, VW, World-Wide and Messrs. Stanton and Dillon, without good faith and in an unfair manner.

The fourth cause of action is brought under the Robinson-Patman Act, 15 U.S. C.A. § 13(a). It alleges that from June 1, 1954, to September 30, 1957, defendant World-Wide not only sold to defendants Queensboro and Fifth Avenue VW products at "lower and discriminatory prices" than those available to the plaintiff but made such products available in larger quantities to the latter defendants.

The fifth cause of action is the same as the fourth except that it charges defendants Queensboro and Fifth Avenue with having violated the Robinson-Patman Act in that they purchased VW products from World-Wide at what they knew to be discriminatory prices.

The sixth cause of action, laid under Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, alleges that the defendants conspired to create a monopoly "in the retail sale" of VW products within the tri-state area of Connecticut, New Jersey and New York in the defendants World-Wide, Fifth Avenue and Queensboro pursuant to which the defendants restricted and eliminated retail VW dealers therein, specifically the plaintiff in September 1957.

The seventh cause of action alleges that all the defendants, except Fifth Avenue and Queensboro, agreed that no VW distributor would handle other foreign competitive products and would require their dealers to follow suit, in violation of Section 3 of the Clayton Act, 15 U.S. C.A. § 14, to which the plaintiff would not agree with the result that in September 1957 the defendants ceased selling to the plaintiff.

The eighth cause of action alleges that all the defendants except Fifth Avenue and Queensboro agreed that VW distributors would sell VW products only to franchised VW dealers located within the exclusive territories assigned to such distributors, and that as a result thereof the plaintiff was unable to procure VW products following the termination of its dealership in September 1957 in violation of Section 1 of the Sherman Act.

The ninth and last cause of action alleges a violation of the Wilson Tariff Act of 1894, 15 U.S.C.A. § 8.

The complaint alleges that jurisdiction for the first and second causes of action is based on diversity of citizenship under 28 U.S.C. § 1441, and that jurisdiction for the remaining causes of action is found in the applicable statutes.

■ With regard to the first and second causes of action VOA and VW move to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b) or for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.[1] Both sides have presented affidavits on the motion.

In the moving affidavit Mr. J. Stuart Perkins, Sales and Organization Manager of VOA, deposes that

"There is no paper writing in existence even purporting to have been signed by or on behalf of [VOA], nor was there any oral agreement on its behalf containing any undertaking to furnish the plaintiff any specific number of automobiles, nor did [VOA] ever agree to sell or deliver a single automobile to plaintiff."

Mr. Manuel Hinke, Export Manager for VW, has filed an affidavit on behalf of that defendant in which he makes a similar averment.

In the opposing affidavit Mr. Salvatore Bochino, plaintiff's treasurer

"* * * freely [concedes] that plaintiff had no formally prepared and executed written franchise agreement with the defendants."

Mr. Bochino further deposes, however, that

"it is undisputed that plaintiff was a franchised dealer and was continuously so recognized by defendants. There is an abundance of documentary evidence attesting to such fact."

Mr. Bochino also relates that a Mr. Barths, General Manager of North American distribution for VW in Germany, told him in January 1957, that he would receive 30 vehicles a month and that he, Barths, would so inform VOA and World-Wide.

In Lawlor v. National Screen Service Corporation, 3 Cir., 1956, 238 F.2d 59, at page 65, judgment vacated on other grounds 1957, 352 U.S. 992, the court said:

"* * * It is well-settled that summary judgment may be granted only if the pleadings, depositions, admissions and affidavits ' * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed.R. Civ.P. 56(c), 28 U.S.C.; See F. A. R. Liquidating Corp. v. Brownell, 3 Cir., 1954, 209 F.2d 375. Any doubt as to the existence of a genuine is-

1. "Rule 12. Defenses and Objections— When and How Presented— By Pleading or Motion—Motion for Judgment on Pleadings.

\* \* \* \* \*

"(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, crossclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: \* \* (6) failure to state a claim upon which relief can be granted, \* \* \* If, on a motion asserting the defense numbered (6) to dismiss for failure of the plead-

ing to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

"Rule 56. Summary Judgment

\* \* \* \* \*

"(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

sue of fact is to be resolved against the moving party. Sarnoff v. Ciaglia, 3 Cir., 1947, 165 F.2d 167, 168. Further, documents filed in support of a motion for summary judgment are to be used for determining whether issues of fact exist and not to decide the fact issues themselves. Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580."

This view has been reaffirmed in Krieger v. Ownership Corporation, 3 Cir., 1959, 270 F.2d 265.

The pleadings and affidavits herein clearly raise questions of fact. Therefore, as to these causes of action the motion under Rules 12(b) and 56 must be denied.

An alternate motion for a more definite statement under Rule 12(e) [2] as to the second cause of action will be denied pending the completion of discovery proceedings by VOA and VW.

█ The third cause of action, which alleges a violation of the Automobile Dealer Franchise Act, presents a problem somewhat similar to that found in the first two causes of action in that the Act authorizes an automobile dealer to bring an action against an automobile manufacturer, " * * * by reason of the failure of said automobile manufacturer from and after August 8, 1956 to act in good faith in performing or complying with any of the terms or provisions *of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer * * * ."* (Emphasis added.) At the outset we are met with the same fact question as heretofore, i. e., was there a franchise agreement or contract in existence between the plaintiff and the defendants herein. The reason-

ing applied in ruling on the motion addressed to the first two causes of action dictates a similar denial of defendants' motion as directed to this, the third cause of action pending the determination of that question. For this reason defendants' legal contentions, viz., that the Act is inapplicable and unconstitutional are not reached. The motion to dismiss for failure to state a claim or for summary judgment is denied.

█ As to the fourth and fifth causes of action the defendants move to dismiss for failure to state a claim upon which relief can be granted on the ground that neither cause of action alleges " * * * anything with respect to the defendants [VOA] or VW * * * ." The allegations referred to specifically charge World-Wide, Fifth Avenue and Queensboro with having violated the Robinson-Patman Act. They do not so charge VOA or VW directly. However, paragraphs 22, 27 and 28 of the first cause of action, incorporated by reference in these causes of action, allege:

"22. That at all of the times hereinafter mentioned, defendant World-Wide acted and acts for and carries out the orders, directives, and sales and operational policies dictated and promulgated by defendants Volkswagenwerk, VUS and VOA, and said defendant, World-Wide, is otherwise directly or indirectly under the domination and control of defendants Volkswagenwerk, VOA and VUS."

"27. That at all times hereinafter mentioned, certain officers, directors, agents and employees of defendant World-Wide were and are officers, directors, agents and employees of de-

---

**2.** "Rule 12(e) Motion for More Definite Statement. If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleadings to which the motion was directed or make such order as it deems just."

fendants Fifth Avenue and Queensboro."

"28. That at all of the times hereinafter mentioned, defendants Charles J. Dillon and Arthur Stanton were and still are officers and directors of defendants World-Wide, Fifth Avenue and Queensboro."

Whether or not these allegations state a claim against these defendants will depend on the resolution of whether defendant World-Wide did in fact act for VOA and VW. The moving affidavits deny any such relationship. The complaint asserts it. The motion as addressed to these causes of action must, therefore, be denied.

■ The sixth cause of action charges that the defendants conspired to create a monopoly in the defendants World-Wide, Fifth Avenue and Queensboro in the Connecticut, New Jersey, New York area and to eliminate competition therein pursuant to which they restricted and eliminated retail VW dealers in these states specifically the plaintiff in Sep-

tember 1957 in violation of Sections 1 and 2 of the Sherman Act.[3] VOA and VW move for dismissal of this cause of action for failure to state a claim upon which relief can be granted or for summary judgment. They rely on Schwing Motor Co. v. Hudson Sales Co., D.C.Md. 1956, 138 F.Supp. 899, affirmed per curiam 4 Cir., 1956, 239 F.2d 176, and Packard Motor Car Co. v. Webster Motor Car Co., 1957, 100 U.S.App.D.C. 161, 243 F.2d 418, in which Schwing was cited with approval.

Two suits for treble damages are reported in the Schwing case. In one, Schwing Motor Company, a Maryland corporation, doing business in Baltimore, filed its complaint against Hudson Sales Corporation, a Michigan corporation, said to be the sales department of the Hudson Motor Car Company, also a Michigan corporation, its manager, the dealer representative, Bankert Hudson, Inc., a Maryland corporation, and its president. Belair Road Hudson, Inc., also a Maryland corporation in business

---

3. "§ 1. Trusts, etc., in restraint of trade illegal; exception of resale price agreements; penalty

"Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: *Provided*, That nothing contained in sections 1–7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, and the making of such contracts or agreements shall not be an unfair method of competition under section 45 of this title: *Provided further*, That the preceding proviso shall not make lawful any contract or agree-

ment, providing for the establishment or maintenance of minimum resale prices on any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other. Every person who shall make any contract or engage in any combination or conspiracy declared by sections 1–7 of this title to be illegal shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be· punished by fine not exceeding $50,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

" § 2. Monopolizing trade a misdemeanor; penalty.

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

in Baltimore, filed the other complaint against the same defendants. Both complaints alleged violations of 15 U.S.C.A. §§ 1 and 15, and were based upon the manufacturer's termination of plaintiffs' dealerships in favor of granting an exclusive franchise to Bankert Hudson, Inc., a dealer which had entered the Baltimore area in 1951.[4]

Schwing's franchise had been renewed from 1945 to 1952; Belair Hudson from 1947 to 1952. They expired in September 1952 and were not renewed.

Defendants moved to dismiss the complaints on the ground that they did not state claims upon which relief could be granted. The issue was stated in the following language by the court:

"* * * The principal question in each case is whether an agreement between an automobile manufacturer and a retail dealer, pursuant to which the manufacturer refuses to renew expiring agreements with two other dealers, and gives the dealer a 'virtual monopoly' of the sale of one make of automobile in one city, is a combination or conspiracy to monopolize trade or commerce, or in restraint of trade or commerce, in violation of the Sherman Act and the Clayton Act." 138 F.Supp. at page 900.

In granting the motion Chief Judge Thomsen said, at page 902:

"* * * Every manufacturer has a natural and complete monopoly of his particular product, especially when sold under his own private brand or trade name * * *. If he is engaged in a private business, he is free to exploit this monopoly by selling his product directly to the ultimate consumer or through one or more distributors or dealers, as he may deem most profitable to him. If he chooses the latter method, he may exercise his own independent discretion as to the parties with whom he will deal. This is a common law

right which the anti-trust laws have not destroyed. United States v. Colgate Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992; Federal Trade Commission v. Raymond Bros.-Clark Co., 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448; Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277; Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 2 Cir., 227 F. 46, 49."

Here the allegation is that the manufacturer acting through its exclusive importer selects the distributors who in turn select the dealers to be franchised within the territory assigned to the distributor. This distinction, which is not necessarily crucial, will be treated at greater length under the eighth cause of action.

The court went on to find no statistical or financial basis upon which a public injury could be premised, and recognized a distinction between restraints which produce an effect upon the market in a commodity generally and those which affect a relatively minor brand in a highly competitive market of the general commodity and said, at page 905:

"* * * By no stretch of the imagination could Hudson or Bankert be considered to have dominated the automobile market in Baltimore or anywhere else."

This determination was based on statistical allegations in the complaint. In the matter at hand, however, there is a question as to what the relevant market is, and as to the statistics which appear in this case not in the complaint but in the moving affidavit.

Chief Judge Thomsen also pointed to the absence of an allegation to drive out the products of competitors and found it a distinguishing factor. Such an averment is present in the seventh cause of action and will be discussed there.

Like Schwing the Packard Motor Co. case was a treble damage action brought

4. It appears that in 1951 and 1952 there were two other Hudson dealers in the

Baltimore metropolitan area in addition to Schwing, Belair and Bankert.

by a dealer against a manufacturer for alleged violation of 15 U.S.C.A. §§ 1 and 2. Judgment was entered for the plaintiff in the district court after a trial, Webster Motor Car Co. v. Packard Motor Car Co., D.C.D.C.1955, 135 F.Supp. 4.[5] The facts in Packard were quite similar to those in Schwing except that Packard had offered the plaintiff dealer a one year franchise renewal which the court found was to be a final renewal. In reversing the judgment entered below the Court of Appeals for the District of Columbia said, "We agree substantially with Schwing * * *" [100 U.S.App. D.C. 161, 243 F.2d 420]. It further found, based on United States v. E. I. duPont de Nemours & Co., 1956, 351 U. S. 377, 76 S.Ct. 994, 100 L.Ed. 1264, that

"* * * Since there are other cars 'reasonably interchangeable by consumers for the same purposes' as Packard cars and therefore in competition with Packards, an exclusive contract for marketing Packards does not create a monopoly. And there is no evidence of any attempt or conspiracy to create a monopoly, since there is no evidence of any attempt to get control of the relevant market." 243 F.2d at page 420.

And further,

"* * * When an exclusive dealership 'is not part and parcel of a scheme to monopolize and effective competition exists at both the seller and buyer levels, the arrangement has invariably been upheld as a reasonable restraint of trade. In short, the rule was virtually one of *per se* legality' * * * The fact that any other dealers in the same product of the same manufacturer are eliminated does not make an exclusive dealership illegal; it is the essential nature of the arrangement * * *." 243 F.2d at pages 420–421.

This passage emphasizes the critical difference between Schwing and Packard on the one hand and this case on the other. Thus, while the manufacturer-dealer distribution system with its concomitant appointment of an exclusive dealer, present in Schwing and Packard is described in the latter case as one of virtually per se legality that definition is limited to a competitive market free of monopoly. Here the complaint alleges that Dillon and Stanton are officers and directors of the defendants World-Wide, Fifth Avenue and Queensboro, and that World-Wide "acts for and carries out the orders, directives, and sales and operational policies dictated and promulgated by defendants [VW], VUS and VOA * * *" and that the defendants conspired "to create a monopoly in the retail sale of [VW products] in the [Connecticut, New Jersey, New York] area in the defendants World-Wide, Fifth Avenue and Queensboro."

In Brosious v. Pepsi-Cola, 3 Cir., 1946, 155 F.2d 99, the court was at pains to point out the absence of an "interlocking directorate or other financial connection" between the defendant manufacturer, Pepsi-Cola and its franchise bottler, also a defendant. That court said, at page 101:

"It appears to us that the first detail to be considered in determining whether or not the facts of the case constitute interstate commerce, or whether or not the facts show an illegal restraint of trade, is the interrelation of Pepsi-Cola and Cloverdale."

The defendants contend that any monopoly enjoyed by World-Wide and its exclusive franchise dealers is the natural monopoly gained in handling the product of a particular manufacturer in a given area, and therefore legal under Schwing and Packard.

In United States v. Columbia Steel Co., 1947, 334 U.S. 495, at page 522, 68 S.Ct. 1107, 1121, 92 L.Ed. 1533, the Court said:

"* * * A restraint may be unreasonable either because a restraint otherwise reasonable is accompanied

---

5. It should be noted that Packard had been decided in the district court at the time of Schwing but Chief Judge Thomsen declined to follow that decision.

with a specific intent to accomplish a forbidden restraint or because it falls within the class of restraints that are illegal per se."

The validity of the instant practice must await evidence of its reasonableness, in view of its asserted monopolistic tendency and the alleged financial interest of defendants Dillon and Stanton in the distributor, World-Wide and in the dealers, Fifth Avenue and Queensboro, having in mind the allegation that defendant World-Wide acts for VW and VOA and that defendants Dillon and Stanton are allegedly officers thereof. These last factors limit the applicability of both Schwing and Packard to this case, at least at this stage of the proceeding. Accordingly, the motion to dismiss the sixth cause of action for failure to state a claim or in the alternative for summary judgment must be denied.

The seventh cause of action is bottomed on Section 3 of the Clayton Act, 15 U.S.C.A. § 14. In it the plaintiff reiterates the charges of the first 36 paragraphs of the complaint [6] and then in paragraph 75 alleges that the defendants VW, VOA, VUS, World-Wide, Arthur Stanton and Charles J. Dillon (all except Fifth Avenue and Queensboro) agreed among themselves that distributors of products manufactured by VW would refrain from dealing in "other foreign manufactured competitive products" and distributors "in turn would require their respective dealers to refrain from dealing in competitive foreign merchandise."

In paragraph 76 the plaintiff further alleges that in pursuance of the foregoing agreement

"  *  *  *  the said defendants requested and required the plaintiff to dispose of and refrain from dealing in products other than those manufactured by the defendant Volkswagenwerk."

The plaintiff further sets forth that in October of 1956 following an inspection of its business premises by the aforementioned defendants acting through Dillon and Stanton, they demanded that plaintiff cease dealing in competitive merchandise; and that in September 1957, upon its failure to heed their "admonition and injunction" against dealing in such merchandise the defendants discontinued sales to the plaintiff, to its damage in the sum of $500,000.

In paragraphs 82 and 83 of the complaint the plaintiff alleges damage in the following language:

"82. That as a direct and proximate result, cause and consequence of the conduct of the defendants as aforesaid, the plaintiff suffered and sustained extensive damage and injury to its business and property, including in addition to actual losses sustained, the loss of substantial profits which would and could have been earned had defendants not acted as aforesaid, the loss of large sums of money for useless advertising, the useless and fruitless expenditure of large sums of money for the construction, improvement and expansion of showroom, sales, parts and allied facilities, the useless expenditure of large and substantial sums of money for the extensive inventory of repair equipment and parts, and the loss incurred and engendered through the impairment and destruction of plaintiff's goodwill, all to its damage in the amount of approximately Five Hundred Thousand ($500,000) Dollars.

"83. That as a direct and proximate cause, result and consequence of the conduct, acts and practices of defendants aforesaid, trade and commerce, which would normally and ordinarily patronize and purchase merchandise from plaintiff, were diverted to plaintiff's competitors and the purchasing and consuming public aforesaid were and are compelled to purchase the said merchandise outside of their normal and usual trading areas and were and are compelled

---

6. See discussion of the eighth cause of action post for summary of these allegations.

to pay higher prices for the said merchandise."

The affidavits of Messrs. Perkins and Hinke deny that VOA and VW were parties to any such agreement as alleged in the complaint or that they participated directly or indirectly in the termination of any relationship with the plaintiff.

The defendants submit that assuming the truth of the allegations of the plaintiff in the seventh cause of action, it does not state a claim upon which relief can be granted under Section 3 of the Clayton Act because it is not alleged that competitors of VW or VOA were affected in reaching the market in Bridgeport, Connecticut or elsewhere.

Section 3 of the Clayton Act is as follows:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, to fix a price charged therefor, or discount from, or rebate upon, such price, on the condition agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for the sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

The defendants declare that plaintiff has failed to allege two essential elements, without which there can be no violation of Section 3 of the Clayton Act, namely (1) a lease, a sale or a contract for sale of goods on the condition that the lessee or purchaser shall not use or deal in the goods of a competitor of the seller, and (2) that the effect of such lease, sale or contract or such condition was to substantially lessen competition or tend to create a monopoly in any line of commerce. The defendants contend that the seventh cause of action alleges no contractual relationship cognizable under the Clayton Act with them, VW and VOA, and if anything, only a private injury out of a refusal to deal for which neither the Clayton Act nor other antitrust laws afford any remedy here.

Nowhere is it directly pleaded by the plaintiff that its contract with the defendants was initially made on the condition that it should not deal in foreign commodities competitive with the Volkswagen products. Rather the allegations would seem to indicate that after the relationship of buyer and seller had been in force for upwards of two years the defendants ascertained that plaintiff was displaying a foreign automobile that was competitive with the Volkswagen car. It was then that the alleged condition was introduced in the relationship with the plaintiff that if it would not desist from offering the competitive vehicle its supply of Volkswagen automobiles would be withdrawn. Upon its refusal to accede to this demand its supply was terminated.

The assertions of Messrs. Perkins and Hinke as to the lack of the existence of any relationship between VW and VOA and the plaintiff as appear in their affidavits on behalf of those defendants on this motion are in diametric opposition to the allegations of the complaint and the averments contained in the affidavit of Mr. Bochino on behalf of the plaintiff. The issue raised thereby is whether there was a contract conditioned in violation of Section 3 of the Clayton Act or whether there was a simple refusal to deal by the seller.[7]

7. See Nelson Radio & Supply Co. v. Motorola, 5 Cir., 1952, 200 F.2d 911, 915–916, in which the court said:

"Section 3 of the Clayton Act, by its express terms, covers only leases, sales, or contracts actually made on the con-

■ The papers of the parties may not be viewed for the purpose of resolving factual issues but only to determine whether genuine issues of fact exist. Krieger v. Ownership Corporation, supra; Lawlor v. National Screen Service Corporation, supra. Therefore the challenge of the defendants that there has not been pleaded by the plaintiff a contract or sale between defendants and plaintiff conditioned that plaintiff could not deal in commodities competitive with the defendants' products cannot succeed at this stage of the proceedings. On this score the motion to dismiss the seventh cause of action of the complaint for failure to state a claim or for a summary judgment must be denied.

The other attack by defendants, that plaintiff has failed to allege that the effect of the contract or sale or condition, if any, was to "substantially lessen competition or tend to create a monopoly in any line of commerce", strikes at a more vulnerable area of the seventh cause of action.

Beyond assertions of damage suffered by the plaintiff as a result of the conduct of the defendants the extent of the allegations in the seventh count go no further than to charge that the defendants in terminating the supply of its cars, diverted plaintiff's patrons to its (plaintiff's) competitors and that the purchasing public was compelled to seek merchandise outside the normal trading area at higher prices.

■ The mere making of a contract conditioned upon exclusive arrangements was not what was interdicted by Section 3 of the Clayton Act. The evil was present as the qualifying clause stated it to be—"where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce." The thrust of Section 3 was aimed at the design of the seller to harm his competitor by compelling his buyer to refrain from dealing in competitive products. This is made clear in the case of Standard Fashion Co. v. Magrane Houston Co., 1922, 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653, wherein the Court in dealing with an alleged violation of Section 3 said:

"* * * It was intended to prevent such agreements as would under the circumstances disclosed probably lessen competition, or create an actual tendency to monoply * * *" 258 U.S. at page 357, 42 St.Ct. at page 362.

The case of Standard Oil Co. of Cal. v. United States, 1949, 337 U.S. 293, 69 S.Ct. 1051, 1062, 93 L.Ed. 1371, made the test of illegality as relating to requirements contracts whether the amount of business covered is "a substantial share of the line of commerce affected."

■ As drafted the complaint raises no such issues but confines itself only to damage to plaintiff and the inconven-

---

dition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods of a competitor of the lessor or seller. There is nothing whatever in the Act to suggest that it covers a situation where the manufacturer refuses to make a sale or enter into a contract, and it has been stated time and again that a manufacturer has the unquestioned right to refuse to deal with anyone for reasons sufficient to himself. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L. Ed. 992; United States v. Schrader's Son, Inc., 252 U.S. 85, 40 S.Ct. 251, 64 L. Ed. 471; Frey & Son v. Cudahy Packing Co., 256 U.S. 208, 41 S.Ct. 451, 65 L.Ed.

892; Arthur v. Kraft-Phenix Cheese Corporation, supra. [D.C. 26 F.Supp. 824]. For that matter, a review of all of the cases decided by the Supreme Court involving Section 3 of the Clayton Act, reveals that in each of them there was an agreement and not a mere refusal to deal. [Footnote 1—Cases cited.] There is a real difference between the act of refusing to deal and the execution of a contract which prevents a person from dealing with another. The plaintiff has not been injured as the result of a contract, either express or implied, which sought to prevent him from dealing in the goods of any competitor of the defendant."

iences of its customers—completely misconceiving the direction in which Section 3 of the Clayton Act is pointed. Even modern liberality in condoning deficiencies in the form of pleading may not be stretched to the point of excusing a failure to allege the illegality basic to the charge that the said section has been violated. Therefore the motion of the defendants VW and VOA that the seventh count should be dismissed must be granted.

The eighth cause of action is as follows:

"As and for an Eighth Cause of Action Title 15 § 1 U.S.C.A.

"85. Plaintiff repeats, reiterates and realleges each and every allegation of the complaint herein designated and numbered 1 to 37 inclusive with the same full force and effect as though herein fully set forth at length.

"86. That on or about the 1st day of June, 1954, the defendants Volkswagenwerk, VOA, VUS, Charles J. Dillon, Arthur Stanton and World-Wide entered into an agreement, contract and understanding wherein and whereby said defendants agreed amongst themselves and with other distributors of Volkswagenwerk products that sales of said merchandise would be made only to franchised Volkswagenwerk dealers, and that such sales would and will be made only and exclusively to those franchised Volkswagenwerk automotive dealers who are located within the exclusive territory assigned to such distributors.

"87. That for the purpose of carrying out the aforesaid unlawful combination, conspiracy, agreements and understandings, the said defendants, including the co-conspirator distributors, by agreement and concert of action, have done the things which, as hereinabove alleged, they combined and conspired to do.

"88. That thereafter, and after defendants Volkswagenwerk, VOA, VUS, Charles J. Dillon, Arthur Stanton and World-Wide had terminated sales and deliveries of Volkswagenwerk merchandise to plaintiff, plaintiff attempted to purchase the said merchandise from the aforesaid co-conspirator distributors.

"89. That the said co-conspirator distributors, in furtherance and pursuant to the unlawful combination, conspiracy, understanding and agreement aforesaid, failed and refused to furnish, sell or deliver Volkswagenwerk merchandise to plaintiff.

"90. That pursuant to the provisions of the Anti-Trust Laws of the United States (Title 15 § 15 U.S. C.A.) plaintiff is entitled to recover threefold the damages sustained by it hereunder, together with reasonable attorney's fees."

Of the first 37 allegations of the first cause of action, incorporated by reference in allegation 85,[8] allegations 1 through 28 describe and define the plaintiff and defendants, including their state of incorporation, the nature of their business, and interrelationship as noted earlier. Allegations 29 through 37 aver that the plaintiff, Fifth Avenue and Queensboro, compete with each other in the Connecticut, New Jersey and New York area, allegedly a vast market for the sale of VW products; that in April 1954 World-Wide made the plaintiff "the duly authorized retail dealer in the City of Bridgeport"; that on January 1, 1956, the defendants, except Fifth Avenue and Queensboro, agreed to furnish plaintiff 30 VW automobiles a month upon condi-

8. Similarly, allegations 1 through 22, 28 and 31 through 34 have been incorporated in the second and third causes of action; allegations 1 through 34 have been incorporated in the fourth and those same allegations plus 54 and 55 are made part of the fifth; allegations 1 through 37 are incorporated in the sixth cause of action and 1 through 36 are part of the seventh cause of action. The allegations incorporated in the ninth cause of action will be discussed later.

tion that plaintiff expand and improve its facilities in accordance with their specifications; that plaintiff received approximately 25 cars a month from World-Wide during the period January 1, 1955, to January 1, 1957; that despite its having made the required improvements plaintiff never received 30 cars a month; and that shipments ceased completely on September 1, 1957.

The remaining allegations of this cause of action (86 through 90) aver that the defendants, except Fifth Avenue and Queensboro, agreed "amongst themselves and with other distributors of [VW] products" that such merchandise would be sold only to franchised VW dealers located within a distributor's assigned territory; that the same defendants stopped selling to the plaintiff; that no other distributor will sell to it; and that the plaintiff "is entitled to recover three-fold the damages sustained by it hereunder * * *."

■ Before proceeding to consider the motion here made it is well to compare the instant pleading with that in United States v. Volkswagen of America, et al., Civil No. 1232–57 now pending in this court. In that suit the Government has alleged, inter alia, that VOA, the 14 co-defendant distributors of VW products in the United States, and the non-defendant, co-conspirator dealers conspired to fix the prices at which those products would be sold in this country. At this writing the Government has taken the position that the territorial agreements and distributor-dealer franchise system of marketing as there alleged were devised to implement the conspiracy averred, in violation of the anti-trust laws. It is recognized that price-fixing is illegal per se. The effect of such an allegation in considering the motion for judgment on the pleadings or for summary judgment brought under Rules 12(c) and 56 of the Federal Rules of Civil Procedure has been discussed in the opinion filed on this day. In any event no allegation of price fixing or for that matter of any other practice concededly illegal per se has been made in the eighth cause of action. For that reason the challenged territorial agreement is viewed here in a somewhat more isolated state than in United States v. Volkswagen of America, et al.

■ The plaintiff has, however, alleged that the defendants seek to achieve a monopoly (allegation 68); that they have refused to sell to it because of its refusal to refrain from handling the products of competitors in violation of Section 3 of the Clayton Act (allegation 81); and that the public has been required to pay higher prices by reason of the defendants' failure to sell to it (allegations 57, 71 and 83). But those averments appear neither in allegations 1 through 37 nor in this cause of action. In view of plaintiff's specific incorporation by reference of certain allegations in the complaint, the non-incorporation of other allegations demonstrates an intent not to make the latter a part thereof. This results in their not being considered in appraising this cause of action on the motion.

■ The obvious deficiency of the eighth claim is its failure to allege a public injury. Indeed it fails to allege even a private injury except to the extent that allegation 90 is premised thereon.

In Noerr Motor Freight v. Eastern Railroad Pres. Conf., D.C.E.D.Pa.1957, 155 F.Supp. 768, at page 818, affirmed per curiam, 3 Cir., 1960, 273 F.2d 218, Judge Clary said:

"In an action of this nature the plaintiff *must allege* and prove a violation of the act and damage to his business or property proximately resulting from the acts and conduct of the defendants which constitute a violation of the act. Injury to the plaintiffs in and of itself is not sufficient to warrant a civil action for injunctive relief and/or damages. There must be harm *to the general public* in the form of undue restriction of trade and commerce as a result of the wrongful contract, combination or concert of

activity. However, the injury to the public need not be nationwide in geographical scope. If it involved monopolistic effect upon interstate commerce it may be narrow in geographic scope. It must, however, injuriously and appreciably affect the public interest. Shotkin v. General Electric Co., 10 Cir., 1948, 171 F.2d 236, 238, 239." (Emphasis added).

A reading of the eighth cause of action makes it clear that no such allegations appear therein.

In Klors v. Broadway-Hale Stores, 1959, 359 U.S. 207 at page 211, 79 S.Ct. 705, 709, 3 L.Ed.2d 741, Mr. Justice Black said, speaking of Standard Oil Co. v. United States, 1911, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619:

" * * * The Court recognized that there were some agreements whose validity depended on the surrounding circumstances. It emphasized, however, that there were classes of restraints which from their 'nature or character' were unduly restrictive, and hence forbidden by both the common law and the statute. 221 U.S., at 58, 65 [31 S.Ct. at page 515]. As to these classes of restraints, the Court noted, Congress had determined its own criteria of public harm and it was not for the courts to decide whether in an individual case injury had actually occurred. Id. [221 U.S.] at [pages] 63-68 [31 S.Ct. at pages 517-518-519]."

In finding that group boycotts are illegal per se the Court cited Northern Pacific Ry. Co. v. United States, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545, where the Court said:

"However, there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use. This prin-

ciple of per se unreasonableness not only makes the type of restraints which are proscribed by the Sherman Act more certain to the benefit of everyone concerned, but it also avoids the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved, as well as related industries, in an effort to determine at large whether a particular restraint has been unreasonable —an inquiry so often wholly fruitless when undertaken. Among the practices which the courts have heretofore deemed to be unlawful in and of themselves are price fixing, United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 210 [60 S.Ct. 811, 838, 84 L.Ed. 1129]; division of markets, United States v. Addyston Pipe & Steel Co. [6 Cir.], 85 F. 271, affirmed 175 U.S. 211 [29 S.Ct. 96, 44 L.Ed. 136]; group boycotts, Fashion Originators' Guild v. Federal Trade Comm., 312 U.S. 457, [61 S.Ct. 703, 85 L.Ed. 949]; and tying arrangements, International Salt Co. v. United States, 332 U.S. 392 [68 S.Ct. 12, 92 L.Ed. 20]."

Based on Klors and the Northern Pacific Ry. Co., the court in United States v. Bitz, D.C.S.D.N.Y.1959, 179 F.Supp. 80, a criminal prosecution but nevertheless applicable here, held:

" * * * that it is only in cases of such per se violations as price fixing, division of markets, group boycotts and tying arrangements that proof of public injury is unnecessary. Count One lacks any allegations of public injury or of facts from which it can be inferred. Since it does not allege one of the per se violations of the Sherman Act the count is insufficient in law." 179 F.Supp. at page 85.

The initial question, therefore, is whether the allegations of the eighth cause of action state a per se violation of Section 1 of the Sherman Act.

Again, in Klors, the Court said, 359 U.S. at pages 212–213, 79 S.Ct. at page 709:

" * * * This is not a case of a single trader refusing to deal with another, nor even of a manufacturer and a dealer agreeing to an exclusive distributorship. Alleged in this complaint is a wide combination consisting of manufacturers, distributors and a retailer."

In United States v. Bitz, supra, 179 F. Supp. at page 86, Judge Dimock said of the first of these two sentences:

" * * * Thus I must assume that it would be lawful for the publisher of a magazine to allot to a wholesaler an exclusive distributorship in Nassau and Suffolk Counties."

Any seeming application of the second sentence quoted is negated by a realization of the facts in Klors. Thus, in that case it was alleged that ten national manufacturers and their distributors conspired with Broadway-Hale Stores not to sell to the plaintiff, in violation of the anti-trust laws. This distinction limits any application of the holding of Klors as such to this case, which involves but one manufacturer.

In the field of automobile distribution Chief Judge Thomsen in the Schwing case, supra [138 F.Supp. 903], said:

" * * * An exclusive agency or dealership necessarily involves a limited monopoly to sell the product of the manufacturer in the area covered by the exclusive agreement.",

and stated in effect that not all exclusive agency agreements are illegal per se.

The alleged system of distribution here in issue contains at least one and possibly two additional steps in that the product passes from the German manufacturer [VW] to its exclusive importer [VOA], to the distributor [e. g. World-Wide] and then to the retail dealer [e. g. plaintiff]. In Schwing and Packard

the marketing channel ran directly from manufacturer to the dealer. Nevertheless I am not persuaded that this system constitutes a per se violation of Section 1 of the Sherman Act. Therefore, the allegation of public injury is necessary. Its omission is fatal under the cases cited. As it now stands this cause of action alleges only a refusal to deal for which in this context the antitrust law provides no remedy. The motion to dismiss the eighth cause of action for failure to state a claim will be granted.

The ninth cause of action alleges a violation of the Wilson Tariff Act of 1894, as follows:

"As and for a Ninth Cause of Action
    Title 15 § 8 U.S.C.A.

"91. Plaintiff repeats, reiterates and realleges each and every allegation of the complaint herein designated and numbered 1 to 37 inclusive and 47, 67, 75, 77, 78, 79, 80, 81, 82, 86, 87 and 88 of the complaint herein with the same full force and effect as though herein fully set forth at length.

"92. That by reason of the aforesaid and pursuant to the provisions of the Anti-trust Laws of the United States (Title 15 § 15 U.S.C.A.), plaintiff is entitled to recover threefold the damages sustained by it hereunder, together with reasonable attorney's fees."

The Wilson Tariff Act reads:

" § 8. Trusts in restraint of import trade illegal; penalty

"Every combination, conspiracy, trust, agreement, or contract is declared to be contrary to public policy, illegal, and void when the same is made by or between two or more persons or corporations, either of whom, as agent or principal, is engaged in importing any article from any foreign country into the United States, and when such combination, conspiracy, trust, agreement, or con-

tract is intended to operate in restraint of lawful trade, or free competition in lawful trade or commerce, or to increase the market price in any part of the United States of any article or articles imported or intended to be imported into the United States, or of any manufacture into which such imported article enters or is intended to enter. Every person who shall be engaged in the importation of goods or any commodity from any foreign country in violation of this section, or who shall combine or conspire with another to violate the same, is guilty of a misdemeanor, and on conviction thereof in any court of the United States such person shall be fined in a sum not less than $100 and not exceeding $5,000, and shall be further punished by imprisonment, in the discretion of the court, for a term not less than three months nor exceeding twelve months." 15 U.S.C.A. § 8.

Allegations 1 through 37 have already been summarized. Allegations 86 through 88 have been set out earlier. Allegation 47, in the third cause of action, avers that the defendants, except Fifth Avenue and Queensboro, are manufacturers within the terms of the Automobile Dealer Franchise Act, 15 U.S.C.A. § 1221. Allegation 67 incorporates by reference allegations 1 through 37 in the sixth cause of action and is duplicated in allegation 91 of this cause of action. Allegation 75, in the seventh cause of action, avers that the defendants, except Fifth Avenue and Queensboro, agreed that VW distributors would not handle foreign competitive products and would require their dealers to follow suit. Finally, allegations 77 through 82, also in the seventh cause of action, recount the plaintiff's refusal to meet that requirement and the defendants' failure to continue selling to it in view thereof, together with an aver-

ment that the plaintiff has thereby sustained damages in the amount of $500,-000.

Examining these allegations in terms of the Wilson Tariff Act I find that the plaintiff has alleged two agreements, each among two more persons or corporations at least one of whom imports foreign products into the United States; and that both agreements are in violation of the anti-trust laws. The first of these is brought under Section 3 of the Clayton Act, and is directed at the defendants' alleged requirement that no distributor or dealer handle foreign competitive products. The second is bottomed on Section 1 of the Sherman Act, and alleges that by reason of an exclusive territory system of distribution no distributor will sell to any but a franchised dealer located within its own assigned area. These allegations formed the seventh and eighth causes of action, both of which are now out of the complaint as such. The allegations themselves of course survive by reason of their incorporation and are here treated as if set out at length in the ninth claim.

As such, however, they are still subject to the very objections which resulted in the granting of the defendants' motion to dismiss for failure to state a claim upon which relief could be granted. The Wilson Tariff Act requires, inter alia, the allegation of a violation of the anti-trust laws. But I have held that the allegations appearing herein and relied upon to meet that requirement do not state such a violation. That being so the plaintiff has failed to meet the standard imposed by the Act. Plaintiff has, therefore, failed to state a claim upon which relief can be granted. Defendants' motion to dismiss the ninth cause of action will, therefore, be granted.

An appropriate order should be submitted.