CERNUTO, INCORPORATED, a corporation, t/d/b/a C&C Builders Supply Company, Plaintiff,

v.

UNITED CABINET CORPORATION, a corporation, Famous Furnace & Supply Company, a corporation, and Robert L. Lappin Company, Inc., a corporation, Defendants.

Civ. A. No. 74–1088.

United States District Court,
W. D. Pennsylvania.

April 20, 1978.

Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiff.

Kirkpatrick, Lockhart, Johnson & Hutchison, Burns & Manley, Pittsburgh, Pa., Roemisch & Wright, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

COHILL, District Judge.

Plaintiff, Cernuto, Inc. (C&C) instituted this action asserting a violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (1970), which declares illegal every contract, combination or conspiracy in restraint of trade. In addition, invoking this court's pendent jurisdiction, C&C set forth five counts predicated on its alleged contract rights and a count based on unfair trade practices.

Defendants in this case are United Cabinet Corporation (United), which manufactures kitchen and bathroom cabinets, Robert L. Lappin Company, Inc. (Lappin), exclusive manufacturer's representative for United in Ohio, parts of West Virginia and western Pennsylvania, and Famous Furnace & Supply Company (Famous), which sells United's products in the same geographic area as did C&C. Defendants United and Lappin have moved for summary judgment on Count 1, which alleges the Sherman Act violation. Lappin alone moved for summary judgment on Count 6, which alleges tortious interference with contractual relations.

It is undisputed that in March, 1974, United authorized C&C to purchase for resale United's products, that C&C did purchase and resell these products, and that in

June, 1974, Lappin advised C&C that United had terminated this arrangement. According to C&C, Famous, Lappin and United agreed to C&C's termination after Famous complained that C&C was selling United products in Famous' territory and that C&C was a low price volume dealer.

In their motion for summary judgment, United and Lappin contend that Count 1 of the complaint fails to allege that the asserted agreement to terminate C&C unreasonably restrained trade, which is essential to make out a violation of § 1 of the Sherman Act except for certain practices condemned as per se unreasonable restraints of trade. In addition, United and Lappin point out that, because C&C did not indicate in its pretrial statement an intent to prove an unreasonable restraint of trade, Local Rule 5.II. precludes C&C from offering such proof at trial. Without establishing an unreasonable restraint of trade, according to the movants, C&C cannot prevail on Count 1 because it has not alleged a per se violation.

C&C apparently agrees with this analysis except that it argues it has alleged a per se violation and has offered in its pretrial statement to prove facts supporting such a violation. The determinative question, therefore, is whether C&C can prove at trial facts supporting a per se violation. We conclude that it cannot and accordingly grant summary judgment as to Count 1 in favor of United and Lappin.

■ For purposes of this motion, United and Lappin accept as true the facts C&C has alleged regarding its termination. Where conflicting inferences can be drawn from the facts, C&C, the nonmoving party, is entitled to all those inferences favorable to its position. *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870 (3d Cir. 1972). If the record shows an indisputable right to judgment and affirmatively establishes that the non-moving party cannot prevail under any circumstances, however, summary judgment may be granted. *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.,* 381 F.2d 245 (4th Cir. 1967).

*Count 1*

■ C&C alleges that defendants' concerted actions led to C&C's termination in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (1970), which provides in part:

"Every contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States . . is declared to be illegal . . . ."

To prove a § 1 violation, a plaintiff must establish that the concerted activity was "in restraint of trade." Because all business agreements restrain trade to some degree, the Supreme Court long ago construed § 1 to proscribe only those combinations that *unduly* restrain trade. *Standard Oil Co. of N. J. v. United States,* 221 U.S. 1, 58–60, 31 S.Ct. 502, 55 L.Ed. 619 (1911). *See Ace Beer Distributors, Inc. v. Kohn, Inc.,* 318 F.2d 283, 286–87 (6th Cir.), *cert. denied,* 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963). Thus, as a general rule, an antitrust plaintiff must prove "that the combination or conspiracy produced adverse, anti-competitive effects within relevant product and geographic markets . . . ." *Martin B. Glauser Dodge Co. v. Chrysler Corp.,* 570 F.2d 72, 81 (3d Cir. 1977). *See Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338, 1346 (3d Cir. 1975). In this case, however, C&C has not alleged such harmful effects of defendants' supposed combination. Nor has C&C disclosed in its pretrial narrative statement or at the pretrial conference the substance of any evidence of anti-competitive effects in the relevant markets, which, according to Local Rule 5.II.G., bars C&C's admission of such evidence at trial. C&C, therefore, is precluded from proving at trial that the alleged agreement was "in restraint of trade."

■ An exception to the general rule requiring proof of an undue restraint of trade, however, exists for certain concerted activities that the courts, through experience with them, consider per se unreasonable restraints. "[B]ecause of their pernicious effect on competition and lack of any redeeming virtue [they] are conclusively

presumed to be unreasonable and therefore illegal." *Northern Pac. R. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). These exceptions include horizontal price fixing, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); resale price maintenance, *Dr. Miles Medical Co. v. John D. Park & Sons*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911); group boycotts, *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); tying arrangements, *International Salt Co. v. United States*, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); and reciprocal dealing, *United States v. Griffith*, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948). Thus, to withstand the motion for summary judgment on Count 1, C&C must have alleged and be able to prove a per se violation of § 1.

C&C alleges that Famous, Lappin and United agreed that United would refuse to deal with C&C. It is well established that a "refusal to deal," i. e., a refusal to buy or sell, is not *in itself* violative of § 1 of the Sherman Act. The right of a businessman to exercise his independent discretion in deciding with whom he will deal has long been recognized. *United States v. Colgate*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). This right of selection, however, is a qualified one; it presumes the right, also qualified, not to deal with others. *See, e. g., Lorain Journal Co. v. United States*, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951). A refusal to deal violates § 1 of the Sherman Act only when it, in combination with other factors, produces an unreasonable restraint of trade. *United States v. Parke, Davis & Co.*, 362 U.S. 29, 32, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *Ace Beer Distributors, Inc. v. Kohn, Inc.*, supra, at 286–87. And a refusal to deal that is in furtherance of a per se violation is itself a per se restraint of trade. *See, e. g., Quigley v. Exxon Co. U.S.A.*, 376 F.Supp. 342, 350–52 (M.D.Pa.1974); *Interphoto Corp. v. Minolta Corp.*, 295 F.Supp. 711 (S.D.N.Y.), *aff'd*, 417 F.2d 621 (2d Cir. 1969). The question becomes, therefore, whether the refusal to deal with C&C for reasons that can be inferred from the record, drawing inferences most favorable to C&C, was in furtherance of a per se violation.

Refusals to deal generally arise in one of three contexts: (1) unilateral refusals to deal, where an individual person or firm independently decides not to sell to, or buy from, one or more customers or suppliers; (2) vertical refusals to deal, where businesses in successive tiers of the distributive system expressly agree not to deal with others; and (3) horizontal refusals to deal, also called group boycotts, where competitors agree not to deal with others in the same level of distributive system or in other levels. 8 von Kalinowski, Antitrust Laws and Trade Regulation § 61.01 (1977). Although the alleged agreement here was vertical in structure, it involved only a single supplier, United, and a single dealer, Famous. Because no other competitor of United agreed not to deal with C&C, the arrangement was not truly a boycott, which would be per se illegal. *Klor's Inc. v. Broadway-Hale Stores, supra*, 359 U.S. at 212, 79 S.Ct. 705; *Reliable Volkswagen S. & S. Co. v. World-Wide Auto Corp.*, 182 F.Supp. 412, 427 (D.N.J.1960); *Arzee Supply Corp. of Conn. v. Rubberoid Co.*, 222 F.Supp. 237, 242 (D.Conn.1963).

Nor can the alleged agreement be regarded as part of either a vertical or horizontal price-fixing scheme that would constitute a per se violation. Vertical price-fixing, generally referred to as resale price maintenance, involves (1) a manufacturer suggesting to his retailers resale prices for his products, and (2) the manufacturer taking steps beyond a mere refusal to deal to enforce his resale price policy. *United States v. Colgate, supra; Dr. Miles Medical Co. v. John D. Park & Sons, supra.* Here C&C has not contended or offered to prove that United advised its distributors that they must adhere to any resale prices. The alleged agreement, therefore, was not in furtherance of a per se illegal vertical price-fixing arrangement. *Cf. Westinghouse Electric Corp. v. CX Processing Laboratories, Inc.*, 523 F.2d 668 (9th Cir. 1975).

Similarly, C&C has not contended or offered to prove that Famous conspired with any of its competitors to fix prices, so as to fall within horizontal price-fixing, also condemned as per se illegal. *See, e. g., United States v. Socony-Vacuum Oil Co., supra.* Thus, C&C has neither alleged nor can it prove concerted action on the part of the defendants to fix prices.

This conclusion does not elevate form over substance. The situation C&C alleges is functionally different from either kind of price fixing that falls within the per se rule. In contrast to vertical price-fixing, under the situation that C&C alleges, United's distributors are under no coercion by United to sell United products at a specified price. In contrast to horizontal price-fixing, under the circumstances that C&C alleges, United's distributors have not agreed to sell United products at a particular price. Thus, United distributors can sell at any price they choose, free from any pressure resulting from the alleged concerted activity in this case. In this way the present case is distinguishable from cases involving price-fixing.

C&C relies heavily on theory espoused in L. Sullivan, Antitrust 427–29 (1977) [hereinafter cited as Sullivan]. Professor Sullivan notes that vertical agreements to terminate competitors have been upheld where the seller is a firm that is small or weak in its market. Sullivan, *supra,* at 427, *citing Schwing Motor Co. v. Hudson Sales Corp.,* 138 F.Supp. 899 (D.Md.), *aff'd,* 239 F.2d 176 (4th Cir. 1956), *cert. denied,* 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957); *Packard Motor Car Co. v. Webster Motor Car Co.,* 100 U.S.App.D.C. 161, 243 F.2d 418, *cert. denied,* 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38 (1957). Although these cases have been read to sanction such agreements generally, he observes that they can be just as easily explained on the basis of the failing company doctrine. Sullivan, *supra,* at 427–28.

According to Professor Sullivan, "[W]hen an existing dealer enlists the manufacturer to choke off one of the dealer's competitors, although the 'agreement' which enables Section 1 to be invoked is vertical, the restraint thereby achieved is horizontal in its impact; it is an attack by one dealer against another." Sullivan, *supra,* at 429. As illustrative of this principle, the author points to *United States v. General Motors,* 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966), where *several* dealers concertedly persuaded the manufacturer to hamper competitors' dealing with and through discounters. The Court in *General Motors,* noting the horizontal impact of the concerted activity between the dealers and the manufacturer, viewed the matter as a "classic conspiracy in restraint of trade" that would activate the per se rule. *Id.* at 140, 86 S.Ct. at 1327. Professor Sullivan concludes, therefore, that in the hypothetical quoted above, "we have not so much a vertical arrangement as a classic example of predatory, *single* firm conduct upon the part of the aggressive dealer to drive out competition." Sullivan, *supra* at 429. (emphasis added.) By this line of reasoning, therefore, the hypothetical posed above, which is similar in many respects to the facts here alleged by C&C, might be viewed either as an attempt to monopolize under Section 2 or, due to the vertical agreement, an unreasonable restraint of trade under Section 1. *Cf. Perryton Wholesale, Inc. v. Pioneer Distributing Co.,* 353 F.2d 618, 622 (10th Cir. 1965), *cert. denied,* 383 U.S. 945, 86 S.Ct. 1202, 16 L.Ed.2d 208 (1966). It is unclear, however, whether the result in the hypothetical should depend on the extent that the aggressive dealer is dominant in the relevant product market, or other factors. It is likewise unclear where this leaves us in determining the issue presented in the case before us; for one thing, it is conceded that C&C's termination did not leave Famous as the sole United distributor in the area.

A recent case, *Copperstone v. Griswold Sporting Goods Co.,* 1977–2 Trade Cas. ¶ 61,623 (E.D.Mich.), held that it would be illegal if a leading sporting goods manufacturer yielded to pressure by a good customer and agreed with him not to supply the plaintiff with its products. If this position is sound, our ruling in the present matter would be an *a fortiori* case, because the

competitive effect of terminating C&C, an existing distributor, would have been more severe than the initial refusal to deal in the *Copperstone* case. *See* Sullivan, *supra*, at 427. The opinion, however, gave no reasoning or authority to support its conclusion; we therefore cannot accord its holding much weight in this regard.

We are faced with a difficult decision in this case, which reaches into an uncertain area of antitrust law. Despite the alleged motive of eliminating a discounter, we are not persuaded that C&C can establish a per se violation. C&C apparently concedes that the business engaged in by Famous and itself has tremendous interbrand competition. We do not feel that the asserted activities, which did not occur on a widespread or large scale basis, can be presumed to restrain trade unduly. We accordingly grant summary judgment for United and Lappin as to Count 1.

### Count 6

In Count 6 C&C seeks damages for tortious interference with contractual relations on the part of Famous and Lappin. Lappin has moved for summary judgment on this count as well, arguing that its actions were privileged. Because we have concluded that C&C cannot recover under the Sherman Act for the defendants' alleged concerted activities, Lappin's actions were privileged under Restatement of Torts § 771 (1939). As to the propriety of the means of inducement referred in Restatement of Torts § 771(c), see Restatement of Torts § 768, Comment e. We accordingly grant summary judgment for Lappin as to Count 6.