## UNITED STATES *v.* HASTINGS.

No. 22. Argued November 12, 1935.—Decided December 9, 1935.

*Assistant Attorney General Keenan,* with whom *Solicitor General Reed* and *Mr. Amos W. W. Woodcock* were on the brief, for the United States.

*Mr. James M. Beck,* with whom *Messrs. Ed C. Brewer, Charles A. Sisson,* and *Challen B. Ellis* were on the brief, for appellee.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Defendant was indicted in the District Court of the United States for violation of the United States Warehouse Act. 7 U. S. C. 270. The indictment contained three counts, each charging the "removal and stealing" of a numbered bale of cotton from a licensed warehouse contrary to the statute and regulations.[1]  A demurrer was

---

[1] The charge in the first count (the other counts being similar) was that defendant (and another) "did knowingly, wilfully, and unlawfully and without any authority of law, remove and steal from and out of the warehouse of the Federal Compress and Warehouse Company, Clarksdale, Mississippi, being the warehouse of said Federal Compress and Warehouse Company known and designated as Plant No. 2, said warehouse being then and there a duly licensed warehouse under and pursuant to the provisions of the United States Warehouse Act, certain agricultural products then and there stored and on storage in said warehouse, to wit: a certain bale of cotton identified on the records of said warehouse as bale of cotton number 407784, for which said bale of cotton a licensed warehouse receipt had theretofore been issued by said Federal Compress and Warehouse Company, the removal and stealing of said cotton from said licensed warehouse being

sustained and the Government brings this appeal under the Criminal Appeals Act. 18 U. S. C. 682.

The penal provision of the statute, so far as pertinent here, is as follows:

" Every person who shall . . . remove from a licensed warehouse contrary to this chapter or the regulations promulgated thereunder, any agricultural products stored or to be stored in such warehouse, and for which licensed receipts have been or are to be issued, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not more than $10,000, or double the value of the products involved if such double value exceeds $10,000, or imprisoned not more than ten years, or both, in the discretion of the court, . . ."

The District Judge certified his grounds for sustaining the demurrer as follows:

"(1) That said indictment fails to charge any offense against the laws of the United States;

"(2) That the indictment fails to charge that the cotton alleged to have been removed and stolen was the property of any person;

"(3) That the indictment fails to allege the name of the owner of said cotton, and does not charge any intent to defraud the owner thereof;

"(4) That the indictment does not allege the value of the cotton alleged to have been removed and stolen, or that the cotton was of any value;

"(5) That section 270, title 7, of the United States Code, being the section under which the indictment is drawn, is unconstitutional, in that, Congress is without authority under the Constitution to make it an offense

---

then and there contrary to and in violation of the said United States Warehouse Act and the regulations promulgated thereunder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

against the laws of the United States to remove agricultural products from a Federal licensed warehouse as alleged in the indictment."

1. *The jurisdiction of this Court.* If the first four grounds of the decision, as stated in the certificate of the District Judge, are to be taken as wholly independent of the questions of the construction and validity of the United States Warehouse Act, those grounds may not be challenged on this appeal. The statute conferring jurisdiction on appeal by the Government in criminal prosecutions confines that jurisdiction to cases where the decision of the District Court, on demurrer, motion to quash or in arrest of judgment, " is based upon the invalidity or construction of the statute upon which the indictment is founded," or where the District Court has sustained " a special plea in bar, when the defendant has not been put in jeopardy." 18 U. S. C. 682. The proposal to confer a broader jurisdiction was considered by the Congress and rejected.[2] Thus the construction of the indictment and its sufficiency merely as a pleading, as distinguished from the construction of the statute, are questions for the District Court. We must accept the construction of the indictment as that court gives it. And where that court has rested its decision upon the invalidity or construction of the statute which underlies the indictment, this Court will not go beyond those grounds and consider other objections to the indictment. *United States* v. *Keitel,* 211 U. S. 370, 397, 398; *United States* v. *Miller,* 223 U. S. 599, 602; *United States* v. *Carter,* 231 U. S. 492, 493; *United States* v. *Moist,* 231 U. S. 701, 702; *United States* v. *Colgate & Co.,* 250 U. S. 300, 301, 302; *United States* v. *Schrader's Son, Inc.,* 252 U. S. 85, 98; *United States* v. *Yuginovich,* 256 U. S. 450, 461.

---

[2] H. R. Rep. 59th Cong., 1st sess., vol. 1, No. 2119; Sen. Rep. 59th Cong., 1st sess., vol. 2, No. 3922; H. R. Rep. 59th Cong., 2d sess., vol. 2, No. 8113.

A distinct question is presented where the District Court has not placed its decision solely upon the invalidity or construction of the statute, but has also sustained the demurrer or granted the motion to quash the indictment upon wholly independent grounds of insufficiency. In such a case the judgment of the District Court would remain in effect, and the defendant would go free of the indictment, whatever views we might express upon appeal as to the construction or validity of the statute. We could not reverse the judgment upon questions not before us. An indictment not merely attacked, but found to be invalid on grounds not open here, would be made the vehicle of an effort to obtain from this Court an expression of an abstract opinion, which might or might not fit a subsequent prosecution of the same defendant or others but would not determine the instant case. Review of a judgment which we cannot disturb, because it rests adequately upon a basis not subject to our examination, would be an anomaly.

An analogous situation is found in cases where the jurisdiction of this Court has been invoked on writs of error or appeals from judgments of state courts, and it appears that, notwithstanding the existence of a federal question, and its consideration and determination by the state court, the judgment rests upon a nonfederal ground adequate to support it and hence would not be affected by a decision by this Court of the federal question. In such cases, we refuse review. While the earlier practice was to affirm the judgment without considering the federal question, the later practice has been to dismiss the writ of error or appeal. *Murdock* v. *Memphis,* 20 Wall. 590, 634, 635; *Jenkins* v. *Loewenthal,* 110 U. S. 222; *Hale* v. *Akers,* 132 U. S. 554, 565; *Hammond* v. *Johnston,* 142 U. S. 73, 78; *Eustis* v. *Bolles,* 150 U. S. 361, 370; *Enterprise Irrigation District* v. *Farmers Canal Co.,* 243 U. S. 157, 164, 166; *Petrie* v. *Nampa Irrigation District,* 248

U. S. 154, 157; *Ex parte Steckler,* 292 U. S. 610; *Capital Endowment Co.* v. *Ohio, post,* p. 546.

It was in the light of the considerations governing the exercise of the judicial power that the Criminal Appeals Act was enacted and appeals by the Government were subjected to the prescribed limitations. *United States* v. *Evans,* 213 U. S. 297, 300. We think that the provision which limits the Government's appeal to those cases where the decision or judgment of the District Court is "*based*" upon the invalidity or construction of the statute, should be taken to refer to cases where that determination, and not a wholly independent ground, is the foundation of the judgment. If the judgment is independently based, and in that respect is not open to correction or reversal, we are of the opinion that this Court should not entertain the Government's appeal. To the extent that the opinion in the case of *United States* v. *Stevenson,* 215 U. S. 190, 195, states a contrary view, it is disapproved.

Are the first four grounds stated by the District Judge independent of the construction of the statute? The first ground may fairly be regarded as not a distinct ground, or a finding of the insufficiency of the indictment as a mere matter of pleading, but as intended to be an introduction to the specifications which follow and to be read in their light. Treating the first ground in this sense, and as merely preliminary, we turn to the specifications in the second, third and fourth grounds, which clearly involve the construction of the Act. That is, they go upon the view that the ingredients of the statutory offense are similar to those of common law larceny and that to establish the offense it must be alleged and proved that the cotton in question was the property of a person named, was removed with intent to defraud the owner, and had value. It is the contention of the Government that this is an unwarranted construction and that the

words of the statute, which do not contain such require-
ments, are fully descriptive of the statutory offense.

In his fifth ground, the District Judge expressly deals
with the constitutionality of the provision, holding that
Congress is without authority " to make it an offense
against the laws of the United States to remove agricul-
tural products from a federal licensed warehouse as al-
leged in the indictment." The concluding words chal-
lenge attention to the absence from the indictment of an
allegation that the cotton was stored for interstate or
foreign commerce. The statement of the District Judge
may be taken to be a construction of the indictment as
charging simply the removal of the cotton from a federal
licensed warehouse which had issued a receipt, without
alleging that the cotton was stored for interstate or for-
eign commerce, and that the receipt was issued accord-
ingly. We are not at liberty to construe the indictment
otherwise. While in this view, the present appeal does
not bring up the questions broadly discussed at the bar
as to products stored for interstate or foreign commerce—
questions which must await a different and appropriate
record—the appeal does present a narrower but still im-
portant question as to the scope of the penal provision.
That is, whether Congress sought to exert and, if so, could
validly exert, such a measure of control over warehouses
operating under federal licenses, as to penalize the re-
moval of products deposited in such warehouses, and re-
ceipted for, regardless of the purpose, or the nature of
the commerce, for which the deposit was made.

We have jurisdiction to determine these questions of
construction and validity.

2. *The construction of the statute.* To construe the
penal provision, we turn to its context, to the statutory
definition of the terms it employs, and to the purpose thus
disclosed.

196

The Act[3] defines the term "warehouse" as "every building, structure, or other protected enclosure in which any agricultural product is or may be stored for interstate or foreign commerce, or, if located within any place under the exclusive jurisdiction of the United States, in which any agricultural product is or may be stored." 7 U. S. C. § 242. The Secretary of Agriculture is authorized to make investigations and classifications, to issue licenses and to prescribe the duties of licensed warehousemen, who must give bond for the faithful performance of their obligations. *Id.*, §§ 243–247. The Secretary is also authorized to issue licenses to competent persons to inspect, sample, classify and weigh agricultural products stored or to be stored in licensed warehouses, and to give certificates accordingly. *Id.*, § 252. Those conducting licensed warehouses are required to receive for storage, within their capacity, agricultural products of the kind customarily stored by them if such products are tendered "in a suitable condition for warehousing" and "in the usual manner" according to the ordinary course of business, "without making any discrimination between persons desiring to avail themselves of warehouse facilities." *Id.*, § 254. Persons who deposit agricultural products for storage in licensed warehouses are to be deemed to have made the deposit subject to the statute and the regulations it authorizes. *Id.*, § 255. It is then provided that "Any fungible agricultural product stored for interstate or foreign commerce, or in any place under the exclusive jurisdiction of the United States" in a licensed warehouse must be inspected and graded by a person licensed for that purpose. *Id.* § 256.

The following provision for the issue of warehouse receipts is of special importance:

[3] Act of August 11, 1916, c. 313, Part C, 39 Stat. 486, amended by Acts of February 23, 1923, c. 106, 42 Stat. 1282, and March 2, 1931, c. 366, 46 Stat. 1463; 7 U. S. C., §§ 241–273.

"For all agricultural products stored for interstate or foreign commerce, or in any place under the exclusive jurisdiction of the United States, in a warehouse licensed under this chapter original receipts shall be issued by the warehouseman conducting the same, but no receipts shall be issued except for agricultural products actually stored in the warehouse at the time of the issuance thereof." *Id.*, § 259.

The next section prescribes the contents of receipts which may be taken to refer to the receipts required by the provision above quoted. *Id.*, § 260.

In the original Act of 1916 it was provided that nothing therein should "be construed to conflict with, or to authorize any conflict with, or in any way to impair or limit the effect or operation of the laws of any State relating to warehouses, warehousemen, weighers, graders, or classifiers," but the Secretary of Agriculture was authorized "to coöperate" with state officials and "through such coöperation to secure the enforcement" of the provisions of the Act. Act of August 11, 1916, Part C, § 29, 39 Stat. 490. This section was amended in 1931, so as to provide for coöperation with state officials in the "discretion" of the Secretary, and with the addition that "the power, jurisdiction, and authority" conferred upon the Secretary should be "exclusive with respect to all persons securing a license," so long as the license remains in effect. Act of March 2, 1931, 46 Stat. 1465; 7 U. S. C. § 269.

Then follows the provision prescribing penalties for the forging, altering, counterfeiting, etc. of licenses, the issue of false or fraudulent receipts, and the conversion or the unauthorized removal from a licensed warehouse of agricultural products for which "licensed receipts" have been or are to be issued. *Id.*, § 270.

The instant case relates to cotton, and the Government emphasizes the salient facts as to the customary move-

ment and marketing of cotton. But the Act is not limited to cotton. Originally, the Act defined " agricultural products " as embracing " cotton, wool, grains, tobacco and flaxseed." [4] By regulations under the Act as amended, it has been extended to a variety of products.[5] The Act is not limited to one section of the country, or to particular market conditions, but applies generally to warehouses for these varied commodities. The Government points to the permissive character of the statute which, it is said, should have " great weight in determining whether Congress has encroached upon the powers of the States." And Congress could not fail to have in mind that there were warehouses in many States, operating under state laws and serving local demands in intrastate transactions; receiving for storage and issuing receipts for agricultural products in connection with enterprises and trade that are entirely local.

It would need stronger evidence than this Act affords to justify the conclusion that Congress intended that warehousemen, in taking advantage of the federal statute and in issuing warehouse receipts as required by its terms, should submit to federal control the deposit of products and the issue of warehouse receipts in the course of their local business where the products were not stored for interstate or foreign commerce. Despite the broad language of certain sections of the Act, we think that (aside from places within the exclusive jurisdiction of the United States) the limitation to storage for interstate or foreign commerce is dominant. We have observed how specific is this limitation in the provision requiring the issue of warehouse receipts. To repeat, the requirement

---

[4] Act of August 11, 1916, c. 313, Part C, 39 Stat. 486.

[5] Act of February 23, 1923, c. 106, 42 Stat. 1282; " Once Again the United States Warehouse Act," U. S. Department of Agriculture (1925), p. 3.

is that receipts shall be issued " for all agricultural products stored for interstate or foreign commerce, or in any place under the exclusive jurisdiction of the United States," in a warehouse licensed under the Act. § 259. The amendment of 1931, with respect to conflict with the operation of state laws, does not militate against this limitation, for while the amendment asserts the exclusive authority of the Secretary of Agriculture, it has relation to the authority conferred by the Act, and the definition in the original Act of the warehouses which may be licensed and the provision of § 259 as to the products for which warehouse receipts are to be issued, were left unchanged by the amendment.

The penal section under which the indictment is laid defines the offense as not simply the unauthorized removal of agricultural products from a " licensed warehouse," but the removal of products " for which licensed receipts have been or are to be issued." § 270. We think that the term " licensed receipts " refers to those prescribed by the statute as above stated.

We agree with the Government that the penal section is fully descriptive of the statutory offense and does not require that a charge of violation should contain allegations such as would be appropriate in the case of common law larceny. But the statute does require that in order to make out a violation through the unauthorized removal of agricultural products, it is not enough that the removal should be from a licensed warehouse, or that a receipt has been given by the warehouseman, but the removal must also be of products for which " licensed receipts " have been or are to be issued. That is, it is an essential ingredient of the offense that the products have been stored for interstate or foreign commerce, or in a place subject to the exclusive jurisdiction of the United States, and that warehouse receipts have been or are to be issued for such storage.

200

3. As we conclude that the Congress has not attempted to punish the removal of products not stored for interstate or foreign commerce (when the place of storage is not within the exclusive jurisdiction of the United States), we need not consider the constitutional objections to such an effort. And as we do not have before us the case of a removal of products stored for interstate or foreign commerce, and for which receipts have been given accordingly, we express no opinion as to the extent of the power of the Congress in that relation.

Because of the absence from the charge of an essential element of the offense as defined in the statute, the District Court did not err in sustaining the demurrer.

*Affirmed.*