**UNITED STATES of America,
Appellant,**

v.

**Irving BITZ et al., Appellees.**

No. 364, Docket 26233.

United States Court of Appeals
Second Circuit.

Argued June 15, 1960.

Decided Aug. 26, 1960.

Robert A. Bicks, Acting Asst. Atty. Gen., Richard B. O'Donnell, Chief, New York Office, Antitrust Division, New York City, Richard A. Solomon, Richard H. Stern, Washington, D. C., Harry Sklarsky, New York City, Attys., Dept. of Justice, for appellant.

Asher W. Schwartz, New York City (Asher W. Schwartz and Edith Lowenstein, New York City, of counsel), for appellee Stanley J. Lehman.

Waldman & Waldman, New York City (Louis Waldman, Louis Haimoff and Seymour Waldman, New York City, of counsel), for appellees Bi-County News Corp., William Fello and Rocco Fello.

Sylvester & Haimoff, New York City (Louis Waldman, Louis Haimoff, and Seymour Waldman, New York City, of counsel), for appellee Charles Gordon.

Before WATERMAN, MOORE and HAMLIN,* Circuit Judges.

HAMLIN, Circuit Judge.

This is an appeal from a decision of the District Court for the Southern District of New York dismissing Count 1 of a six-count indictment filed therein on January 23, 1959.[1] Count 1 charges eleven individuals defendants and one corporate defendant with engaging in an unlawful combination and conspiracy in restraint of interstate trade and commerce in the wholesale distribution and sale of newspapers and magazines in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1. Count 2 charges nine of the individual defendants and the corporate defendant with violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2. The remaining four counts charge a number of the individual defendants with violation of, or conspiracy to violate, the Hobbs Act, 18 U.S.C. § 1951. The latter five counts are not involved in this appeal.

Count 1 alleges that six of the individual defendants were officers of the Newspaper and Mail Deliverers' Union of New York and Vicinity (the Union) and that the remaining five were officers, employees or stockholders in various corporations. Defendant Bi-County News Corporation is one such corporation. The business or purpose of these corporations is not set forth, but they are apparently engaged in wholesale distribution of newspapers and magazines.

The indictment recites that Suburban Wholesalers Association, Inc. (Suburban Wholesalers), is a New York membership corporation consisting of twelve members who purchase newspapers and magazines from publishers and sell them at wholesale to news stands and other outlets for resale by those outlets to consumers.

The members of Suburban Wholesalers service substantially the Suburban Area of New York, which is defined as the area included within approximately a 50-mile radius of Columbus Circle, New York, New York, with the exception of New York City. The members of Suburban Wholesalers distribute, in specified areas which do not overlap, all the principal New York City newspapers and all the principal magazines published throughout various states, as well as local newspapers published in their respective areas. There is thus a continuous and regular flow of interstate commerce of newspapers and magazines from various states in the United States to members of Suburban Wholesalers located in New York, New Jersey, and Connecticut. The total gross sales of newspapers and magazines by the members of Suburban Wholesalers amounted to more than $30,000,000 in 1958.

Suburban Wholesalers acts as joint bargaining agent for all its members in negotiating labor contracts with the Union. Individual contracts are thereafter executed between the Union and the members. The Union, exclusively, by agreement, supplies the members of Suburban Wholesalers with all their employees engaged in the handling and delivery of magazines. It is vital, because of the nature of the newspaper and magazine industry, that distribution be unhindered since delays in delivery, even for a day in the case of newspapers and several days in the case of magazines, render the merchandise unsalable. Strikes and threats of strikes have a coercive effect upon the members of Suburban Wholesalers, since, by provision in labor contracts between the Union and the newspaper and magazine publishers covering their employees engaged in the handling of newspapers and magazines, such publishers can use as wholesalers only such distributors as are themselves under labor contractual relation with the Union.

---

* Of the Ninth Circuit, sitting by designation.

[1]. The decision of the District Court is reported at 179 F.Supp. 80.

After setting forth the above, the indictment continues:

### Combination and Conspiracy in Restraint of Trade

22. Beginning on or about January 1, 1955, and continuing to and including the date of the return of this indictment, the defendants and co-conspirators have engaged in an unlawful combination and conspiracy in restraint of the aforesaid interstate trade and commerce in the wholesale distribution and sale of newspapers and magazines in violation of Section 1 of the Act of Congress of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies" as amended, c. 647, 26 Stat. 209, 15 U.S.C.A. § 1, commonly known as the Sherman Act.

23. The aforesaid combination and conspiracy has consisted of a continuing agreement and concert of action among the defendants and co-conspirators, the substantial terms of which have been and are:

a. To restrain the members of Suburban Wholesalers in their wholesale distribution of newspapers and magazines by coercing and compelling said members to pay to the conspirators various sums of money, as a prerequisite to obtaining labor contracts with the Union to avoid strikes or the continuation of strikes already called by said Union;

b. To prevent the shipment of newspapers and magazines in interstate commerce to members of Suburban Wholesalers not acceding to the demands of the conspirators; and

c. To hinder and exclude or attempt to hinder and exclude actual or potential competitors of defendants Irving Bitz, Charles Gordon and Bi-County.

24. During the period covered by the indictment, the said combination and conspiracy has been effectuated by various means and methods including, but not limited to, the use of union influence, duress and threats of strikes or strikes to compel:

(a) the payment of $25,000 by the members of Suburban Wholesalers to defendants Angelo Lospinuso, William Walsh and Harry Waltzer on or about January and February 1955, in connection with the negotiation of a labor contract between the Union and Suburban Wholesalers effective February 1, 1955;

(b) the payment of $45,000 by Suburban Wholesalers to defendant Irving Bitz and to defendants Sam Feldman, Stanley J. Lehman, John J. Lawrence, Jr. and Harry Waltzer in connection with the negotiation of a labor contract between the Union and Suburban Wholesalers effective February 1, 1957; and

(c) other payments by members of Suburban Wholesalers to various Union officials.

### Effects of the Conspiracy to Restrain Trade

25. The combination and conspiracy hereinbefore alleged has had the following effects, among others:

a. All the members of Suburban Wholesalers have been compelled to pay financial tribute as a condition for engaging in the aforesaid trade and commerce;

b. Newspaper and magazine publishers have been hindered, restrained or prevented from distributing newspapers and magazines in the Suburban Area to their financial loss and detriment;

c. Retail news dealers in the Suburban Area have been hindered, restrained or prevented from selling newspapers and magazines to their financial loss and detriment;

d. Competitors of Irving Bitz, Charles Gordon and Bi-County have been deprived of an equal opportunity to obtain labor contracts with the Union and to compete with these defendants in the wholesale distribution of newspapers and magazines; and

e. Interstate trade and commerce in the wholesale distribution of newspapers and magazines in the Suburban Area has been unreasonably restrained.

In granting the motion to dismiss Count 1 of the indictment the District Court stated:

> "I hold, therefore, that it is only in cases of such *per se* violations as price fixing, division of markets, group boycotts and tying arrangements that proof of public injury is unnecessary. Count One lacks any allegation of public injury or of facts from which it can be inferred. Since it does not allege one of the *per se* violations of the Sherman Act the count is insufficient in law."

The Government contends (1) that allegations of public injury or facts from which public injury can be inferred are not required in an antitrust indictment, (2) that Count 1 contains adequate "public injury" allegations, and (3) that Count 1 pleads a *per se* violation of the Sherman Act, with the result that allegation of public injury is unnecessary, even if such allegations are required in non *per se* cases. If the Government is correct in any one of its three contentions, the decision of the District Court must be reversed. Whether allegations of public injury or facts from which public injury can be inferred must be pleaded in an antitrust indictment,[2] or whether Count 1 pleads a *per se* violation of the Sherman Act,[3] are questions which need not be decided, for we hold that Count 1 contains adequate allegations of public injury, or allegations of facts from which public injury can reasonably be inferred.

■■ The indictment clearly charges a conspiracy to prevent the shipment of newspapers and magazines in interstate commerce to members of Suburban Wholesalers refusing to pay "financial tribute" to the conspirators, and to prevent the emergence of new competition or the maintenance of existing competition. Some of the effects of the conspiracy have been (1) to compel the members of Suburban Wholesalers to pay money as a condition for engaging in trade, (2) to deprive competitors of Bitz and others of an equal opportunity to obtain labor contracts with the Union, which in turn deprives them of an opportunity to compete in the wholesale distribution of newspapers and magazines, and (3) to restrain newspaper and magazine publishers as well as retail news dealers from carrying on their business. These and other allegations in the indictment are sufficient to entitle the Government to attempt to prove public injury. The sufficiency of pleadings in antitrust cases is to be determined in the light of the liberal rules applicable to pleadings in general. Radovich v. National Football League, 352 U.S. 445, 453, 77 S.Ct. 390, 1 L.Ed.2d 456; Nagler v. Admiral Corp., 2 Cir., 248 F.2d 319; Niagara of Buffalo, Inc. v. Niagara Manufacturing and Distributing Corp., 2 Cir., 262 F.2d 106. "Whether these charges be called 'allegations of fact' or 'mere conclusions of the pleader,' we hold that they must be taken into account in deciding whether the Government is entitled to have its case tried." United States v. Employing Plasterers' Association of Chicago, 1953, 347 U.S. 186, 74 S.Ct. 452, 454, 99 L.Ed. 618. A like liberality prevails in criminal cases. United States v. Debrow, 1953, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92; United States v. Lamont, 2 Cir., 236 F.2d 312. The present indictment sets out the nature of the agreement constituting the conspiracy, some of the means by which it has been effectuated, and its general effects. It clearly alleges an unreasonable restraint upon the distribution of newspapers and periodicals in the suburbs of New York, from which public injury can

2. It is suggested that public injury must be alleged in private civil actions brought under the Sherman Act. See, e.g., Shotkin v. General Electric Co., 10 Cir., 1948, 171 F.2d 236; Feddersen Motors v. Ward, 10 Cir., 1950, 180 F.2d 519; but see Klor's Inc. v. Broadway-Hale Stores, Inc., 9 Cir., 255 F.2d 214, reversed 1959, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741.

3. See Klor's, Inc. v. Broadway-Hale Stores, 1959, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741; Northern Pacific R. Co. v. United States, 1957, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545.

be inferred. It sufficiently apprises the defendants of the charges made against them. We hold it to be sufficient.

Some of the defendants have filed a memorandum contending that under 18 U.S.C. § 3731 the Government must appeal directly to the Supreme Court and that this Court lacks jurisdiction to determine the merits of the appeal. The Criminal Appeals Act, 18 U.S.C. § 3731, provides in part:

"An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

"*From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded.*

\*   \*   \*   \*   \*   \*

"*From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy.*

"An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section.

Defendants suggest that the Government may take a direct appeal to the Supreme Court under either of the paragraphs italicized; that is, that the decision of the District Court dismissing Count 1 of the indictment (1) is based on "construction of the statute upon which the indictment \*.  \*   \* " is founded, and (2) is a "decision or judgment sustaining a motion in bar  \*   \* ."

The Government concedes that the District Court's determination that the Sherman Act requires, except in *per se* cases, allegation of public injury or of facts from which it can be inferred, involves "construction of the statute upon which the indictment or information is founded." We have accepted this concession, at least for present purposes. In addition to thus construing the Sherman Act, the District Court construed Count 1 of the indictment, which he found lacked "any allegation of public injury or of facts from which it can be inferred." With this conclusion we differ. It may be seen that the decision of the District Court rests not only on construction of the statute, but as well upon construction of the indictment. Because of this we think we have jurisdiction and that the Government could not appeal directly to the Supreme Court. In United States v. Swift & Co., 1943, 318 U.S. 442, 63 S.Ct. 684, 685, 87 L. Ed. 889, the Government sought to take a direct appeal to the Supreme Court from a judgment of the District Court setting aside an indictment under the Sherman Act. The decision of the District Court was based, in part at least, on the inadequacy of the allegations of the indictment to charge that the conspiracy or agreement affected commerce within the meaning of the Sherman Act. The Supreme Court determined it was without jurisdiction to entertain the appeal and accordingly remanded the cause to the Circuit Court of Appeals, indicating approval of the principle that a direct appeal to the Supreme Court is not authorized "when the decision of the district court rests in part on grounds independent of the validity or construction of the statute on which the indictment is founded." See also United States v. Wayne Pump Co., 1942, 317 U.S. 200, 63 S.Ct. 191, 87 L.Ed. 184; United States v. Jones, 1953, 345 U.S. 377, 73 S.Ct. 759, 97 L.Ed. 1086; United States v. Mersky, 1960, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423, did not involve construction of the information. The District Court's dismissal of the

information rested on two alternative grounds, both of which involved construction of the statute. The dismissal did not, as it did in Swift and as it does here, rest in part on the inadequacy of the allegations in the indictment or information. We think that Swift controls this case, and that the provisions of § 3731 authorizing direct appeal to the Supreme Court from a decision or judgment of a District Court "setting aside, or dismissing any indictment * * * or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment * * * is founded" is inapplicable. It follows that this Court has jurisdiction unless the present appeal is from a "decision or judgment sustaining a motion in bar." 18 U.S.C. § 3731. Defendants contend that the appeal is from such a decision, relying on United States v. Mersky, 1960, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423.

■ In Mersky the statute under which defendants were charged required that articles imported into this country be marked to indicate to an ultimate purchaser in the United States the English name of the country of origin. Pursuant to the statute the Secretary of the Treasury adopted implementing regulations. Defendants were charged with removing the labels from violins imported from the Soviet Zone of Germany with intent to conceal from the ultimate purchasers in the United States the identity of the violins' country of origin. The District Court dismissed the information on the ground that the regulations did not render alteration of the marking illegal, and, alternatively, that the regulations were too vague to sustain a criminal prosecution. This Court refused to hear the appeal on the same ground asserted by defendants here, namely, that (1) the District Court's opinion was tantamount to a construction of the statute upon which the information (here it is an indictment) was based, and (2) that the effect of the dismissal was to sustain a motion in bar. United States v. Mersky, 2 Cir., 261 F.2d 40, 44. The case was certified to the Supreme Court, which held the dismissal did involve construction of the statute, thus authorizing direct appeal, and, in view of this conclusion, found it unnecessary to pass on the claim that the District Court sustained in effect a "motion in bar." Five Justices did, however, indicate their views with respect to the "motion in bar" question. Two felt that the dismissal was one "sustaining a motion in bar," and three felt that it was not. Mr. Justice Stewart, dissenting, stated that the Government's right to appeal under the provision in question is "limited to a judgment sustaining a motion of a kind historically considered a 'special plea in bar.' "[4] He continued:

"This concept of a special plea in bar as a plea similar in substance to confession and avoidance has been consistently followed in the decisions of this Court. The cases in which jurisdiction has been accepted on the ground that the decision below sustained a special plea in bar have invariably involved District Court decisions upholding an affirmative defense in the nature of a confession and avoidance. The motion to

4. "Until 1948 the Criminal Appeals Act provided for direct appeal to this Court from a 'decision or judgment sustaining a special plea in bar, when the defendant had not been put in jeopardy.' In 1948 the phrase 'motion in bar' was substituted for 'special plea in bar.' 62 Stat. 845. The sole purpose of the change was to bring the terminology of the Criminal Appeals Act into conformity with Rule 12 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which abolished special pleas, demurrers and motions to quash as such, and substituted motions to dismiss or to grant appropriate relief. The statutory revision was not intended to, and did not, expand the Government's right of appeal. See H.R.Rep.No.304, 80th Cong., 1st Sess. A-177. That right is still limited to a judgment sustaining a motion of a kind historically considered a 'special plea in bar.' " Mr. Justice Stewart, dissenting, United States v. Mersky, 1960, 361 U.S. 431, 456, 80 S.Ct. 459, 473, 4 L.Ed.2d 423.

dismiss which was sustained by the District Court in this case was clearly not the equivalent of a special plea in bar, as thus historically understood, but, rather, the equivalent of a general demurrer. The judgment sustaining that motion is, therefore, not directly reviewable here."

As exemplifying cases where direct appeal is authorized on the ground the decision of the District Court sustained a special plea in bar, the dissent cites a number of cases, including United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210 (privilege); United States v. Goldman, 277 U.S. 229, 48 S.Ct. 486, 72 L.Ed. 862 (statute of limitations); United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (*res judicata*).

In a concurring opinion Mr. Justice Brennan stated that "The touchstone of what constitutes a 'judgment sustaining a motion in bar' is precisely what Judge Lumbard in the Court of Appeals said it was—whether the judgment is one which will end the cause and exculpate the defendant." 361 U.S. 431, 441, 80 S.Ct. 459, 465. In his view, a direct appeal was authorized on the ground the dismissal was one sustaining a motion in bar.

Under either view, and irrespective of the correctness of our decision in Mersky a direct appeal is not authorized in this case. The motion to dismiss which was sustained in this case was not the equivalent of a "special plea in bar" as that term is interpreted by the dissents. Neither did the dismissal sustain a motion in bar as that term is defined in the concurring opinion. This latter for the reason that the effect of the dismissal was not to "end the cause and exculpate the defendants," but merely to require the Government to re-indict the defendants or to file an information containing adequate allegations of public injury. This situation is different from Mersky, where a decision favorable to the defendant precluded further prosecution. Whereas the dismissal in Mersky precluded the

Government from proceeding further, here it merely requires the Government to plead additional facts.

Reversed.