**UNITED STATES of America,**
**Appellant,**

v.

**Addison Raymond KETCHUM, Appellee.**

**No. 344, Docket 28083.**

United States Court of Appeals
Second Circuit.

Argued May 8, 1963.

Decided June 25, 1963.

Arthur I. Rosett, New York City, Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, Arnold N. Enker, Asst. U. S. Atty., for appellant.

Jules Ritholz, New York City, Corcoran, Kostelanetz, Gladstone & Lowell, New York City (Edward J. Daus, Jon H. Hammer, New York City, of counsel), for appellee.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

Ketchum, formerly a Public Works Civil Engineering Adviser in the International Cooperation Administration (ICA) was indicted in the Southern District of New York for violating 18 U.S.C. § 281, now ·superseded by 18 U.S.C. § 203, 76

Stat. 1121 (1962). Section 281 made it a crime when any federal employee "directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim * * * or other matter in which the United States is a party or directly or indirectly interested," before any Government department or agency. Each violation of the statute was punishable by fine of not more than $10,000 or imprisonment for not more than two years, or both.

Counts 1-8 of the indictment charged that Ketchum had received such compensation "in the amounts hereinafter set forth, for services rendered and to be rendered by himself and others," in relation to an agreement dated April 17, 1956, between the ICA and the National Economic Council of the Philippines and in relation to a contract dated January 4, 1957, apparently stemming from the earlier agreement, for the council's purchase of steel piles and related materials. This language was followed by a three column table, the respective columns being headed "Count," "Date Compensation Received," and "Compensation." The counts were numbers 1 through 8, the dates ranged from July 2, 1957, through April 12, 1958, and the compensation was in eight separate amounts totaling $130,656.11. Count 9 charged that Ketchum and one Thompson, see United States v. Thompson, 319 F.2d 665 (2 Cir., 1963), had conspired with corporations and other individuals in violation of 18 U.S.C. § 371 to defraud the United States in violation of § 281. The alleged conspiracy involved Ketchum's corruptly inducing the National Economic Council of the Philippines to incorporate in an invitation to bid on a contract for the reconstruction of a pier the exact specifications already prepared by one of the conspiring corporations, and also "to further preclude competition in the bidding on the aforementioned contract" by changing the terms from c.i.f to f.a.s. The overt acts charged were four deposits allegedly made in Ketchum's broker-

age account in the Southern District of New York, corresponding in date and amount to the receipts alleged in Counts 1, 5, 6 and 8.

Ketchum moved to dismiss Counts 2-8 as being merely duplications of Count 1 and not stating separate offenses against the United States; Judge Dawson granted the motion in an opinion, D.C., 212 F.Supp. 53. The United States appealed to this Court under 18 U.S.C. § 3731, claiming that the district judge had misconstrued both the statute and the indictment and also that, even on the judge's view, he should not have dismissed Counts 2-8 but should at most have required the Government to consolidate the eight counts or to elect among them.

The case initially came before us on a motion by Ketchum contending that the Government should have taken its appeal directly to the Supreme Court. The argument was that the case was covered by the provision in 18 U.S.C. § 3731 for such a direct appeal by the Government "From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded," and therefore was not within the provision for an appeal by the Government to a court of appeals "From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section." We postponed decision whether to certify the appeal to the Supreme Court pursuant to the final paragraph of § 3731 pending argument on the merits before the same panel.

Ketchum's challenge to our jurisdiction rests on the proposition that the district judge's dismissal of Counts 2-8 of the indictment was based on a reading of 18 U.S.C. § 281 that would refuse to make a separate crime out of each receipt of compensation where the

**6**

receipts were passive and in pursuance of a single course of conduct—a reading which the Government claims to be wrong. But, as the very statement of Ketchum's argument indicates, the dismissal must also have rested on a construction of the indictment as charging only a single corrupt course of conduct by Ketchum and passivity in his receipts —a construction which the Government contends not to be a necessary one. It is plain that if the United States did not dispute the correctness of the district court's construction of the statute and rested its appeal solely on an allegedly erroneous construction of the indictment, the appeal would be to this court rather than directly to the Supreme Court. United States v. Jones, 345 U.S. 377, 73 S.Ct. 759, 97 L.Ed. 1086 (1953). The same result should follow when the United States keeps both strings to its bow. On a direct appeal the Supreme Court is bound by the district judge's construction of the indictment. United States v. Borden Co., 308 U.S. 188, 193, 60 S.Ct. 182, 84 L.Ed. 181 (1939). To allow such an appeal in a case like this would thus leave his construction of the indictment wholly immune to review at the instance of the Government. This consequence was indeed inevitable under the Criminal Appeals Act as it was originally enacted, 34 Stat. 1246 (1907), and as it stood for 35 years, but was meant to be avoided by the Act of May 9, 1942, 56 Stat. 271, for the first time providing for an appeal by the Government to the courts of appeals from certain judgments in criminal cases not directly appealable to the Supreme Court. See United States v. Swift & Co., 318 U.S. 442, 63 S.Ct. 684, 87 L.Ed. 889 (1943). It would seem undesirable in the last degree to read the amended Act as requiring the Supreme Court to pass upon the application of a criminal statute to an indictment whose construction is itself in issue, in a case where the court of appeals, which Con-

gress has authorized to review decisions involving the construction of indictments, would construe the indictment in such a way as to eliminate, alter or postpone the statutory issue. See United States v. Hastings, 296 U.S. 188, 193, 56 S.Ct. 218, 80 L.Ed. 148 (1935). The words of the Criminal Appeals Act do not compel such a reading; the purposes of Congress can be accomplished, without violence to the language, by reading the Act as saying that where a decision of a district court setting aside or dismissing an indictment or information, or a count thereof, as not within a statute as construed by it, rests in part on a construction of the indictment which the Government also contests, appeal will not lie directly to the Supreme Court but initially to the court of appeals—with the Supreme Court then being able to consider all pertinent issues on certiorari if it deems the case to warrant such review. United States v. Hastings, supra, 296 U.S. at 194, 56 S.Ct. at 220, 80 L.Ed. 148; United States v. Bitz, 282 F.2d 465, 469–471 (2 Cir., 1960).

No contrary conclusion is compelled by a sentence in Mr. Justice Reed's opinion in United States v. Wayne Pump Co., 317 U.S. 200, 206–207, 63 S.Ct. 191, 195, 87 L.Ed. 184 (1942),[1] on which appellee relies. Apart from the facts that Wayne Pump was decided under the Criminal Appeals Act as it stood prior to the 1942 amendment and that the sentence is only dictum since the Supreme Court dismissed the appeal, we read it as upholding direct appeal to that Court only in the situation limned in Mr. Justice Reed's next sentence, namely, where "the essence of the ruling" dismissing the indictment is "based upon a construction of the statute" rather than of the indictment as well—a reading fortified by his statement in the same paragraph that "It was a statutory construction such as that just stated which led this Court to

---

1. "Where a court interprets a criminal statute so as to exclude certain acts and transactions from its reach, it would of necessity also hold, expressly or implied-

ly, * * * that the indictment, considered merely as a pleading, was defective."

accept jurisdiction under the Criminal Appeals Act in United States v. Hastings, 296 U.S. 188, 195 [56 S.Ct. 218, 221, 80 L.Ed. 148]." [2] The statute is, indeed, a confusing one—see the four opinions in United States v. Mersky, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423 (1960)—and would benefit from a thorough overhaul. Our interpretation of it, which we think sufficiently respects the language and carries out the discernible purpose, has the merit of tending to limit direct appeals to those important cases for which the Criminal Appeals Act was designed. See the history outlined in Frankfurter and Landis, The Business of the Supreme Court (1928), at 114 ff. and in Mr. Justice Frankfurter's dissent in United States v. Mersky, supra, 361 U.S. at 446–451, 80 S.Ct. at 467–470, 4 L.Ed.2d 423. It also comports with the "dominant principle of having this [Supreme] Court review decisions only after they have gone through two judicial sieves." Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 92–93, 80 S.Ct. 568, 579–580, 4 L.Ed.2d 568 (1960) (dissenting opinion of Mr. Justice Frankfurter). We hold that we have jurisdiction.[3]

If Counts 1–8 are read apart from Count 9, the conspiracy count, they afford no basis for concluding, as the district judge here did, that they charged that "The payments to him [Ketchum] were all for a single act, either committed or to be committed. It was a bribe paid in installments and not a series of separate bribes,"—even though the judge may well have been right in surmising that this is what the evidence will show. While all eight receipts were alleged to be "in relation to" two contracts, the language was broad enough to permit the Government, which had as yet given no bill of particulars,[4] to prove that each payment was for a separate service by Ketchum. Neither do we think the judge's construction follows even if we consider the bare bones of the substantive counts as being supplemented by the flesh of the conspiracy count, as he apparently did. Ketchum was there alleged to have performed a considerable number of acts; that all of these were done in pursuance of a single agreement, under which the payments charged in Counts 1–8 would automatically be made to him, is a permissible reading but not one to

2. At the cited page of the Hastings opinion, Chief Justice Hughes said that insofar as the district court had construed the indictment, "We are not at liberty to construe the indictment otherwise," and that claims depending on what the Government contended to be the proper construction of the indictment "must await a different and appropriate record." Under the 1942 amendment, alleged misconstruction of an indictment is now cognizable in a court of appeals.

3. Appellee also claims that United States v. Universal C.I.T. Credit Corporation, 344 U.S. 218, 225–226, 73 S.Ct. 227, 231–232, 97 L.Ed. 260 (1952), requires a conclusion contrary to that which we have reached. The Supreme Court there took jurisdiction of an appeal from a dismissal of various counts of an indictment as not charging separate crimes and stated, in affirming, that this would not preclude the Government "from now amending the information either to meet the exigencies of the evidence or to charge as separate offenses separate courses of con-

duct as to each substantive provision." But the Government had not argued in that case that the district judge had misread the information, as it here argues that the judge misconstrued the indictment. And the quoted language was addressed, not to the question of appellate jurisdiction, but to the excessive relief which the Supreme Court thought the district judge had there granted, even though it agreed with him that the information was based on an improper theory—a point also arising in this case and discussed below.

4. Ketchum's motion for a bill of particulars was argued at the same time as his motion to dismiss Counts 2–8. It was granted only as to one item with respect to these counts, namely, "Specify the nature of the services allegedly rendered or to be rendered by the defendant * * * and for which he allegedly received compensation in the amounts set forth therein." The record does not show whether a bill of particulars has been furnished.

8

which the Government would be confined by the indictment alone.

 Moreover, even if it were far clearer than it now is that the Government's evidence would necessarily be limited as the judge thought, and if we should agree with his construction of the statute as permitting only one punishment in that event, dismissal of Counts 2–8 was still unwarranted. The draftsman "may cast the indictment in several counts whether the body of facts upon which the indictment is based gives rise to only one criminal offense or to more than one. To be sure, the defendant may call upon the prosecutor to elect or, by asking for a bill of particulars, to render the various counts more specific. In any event, by an indictment of multiple counts the prosecutor gives the necessary notice and does not do the less so because at the conclusion of the Government's case the defendant may insist that all the counts are merely variants of a single offense." United States v. Universal C.I.T. Credit Corp., supra, 344 U.S. at 225, 73 S.Ct. at 231, 97 L.Ed. 260. See also Dealey v. United States, 152 U.S. 539, 542, 14 S.Ct. 680, 38 L.Ed. 545 (1894). The basis for requiring even an election among counts is not at all that the defendant may otherwise face multiple sentences. Decision as to the unit of punishment is not controlled by the form of the indictment; as Judge Wyzanski has said, "multiplicitousness never places a defendant in jeopardy of multiple sentences." United States v. Mamber, 127 F.Supp. 925, 927 (D.Mass.1955). The reasons for requiring the Government to elect among counts in some cases are, rather, primarily those of promoting the order and efficiency of the trial and avoiding the risk that "the prolix pleading may have some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes." Ibid. Whether election among Count 1–8 should be required, either before or after the close of the evidence, is not before us. Under no view, however, was dismissal an appropriate remedy.

Reversed.